Commonwealth *v.* Bartman et al., Appellants.

Argued November 18, 1975. Before WATKINS, P. J., HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ. (JACOBS, J., absent).

*George B. Stegenga,* for appellant, James K. Bartman.

*Charles C. Gentile,* for appellant, Michael A. Dikun.

*James A. Caldwell,* Special Assistant District Attorney, and *W. Bertram Waychoff,* District Attorney, submitted a brief for Commonwealth, appellee.

OPINION BY HOFFMAN, J., April 22, 1976:

Appellants, James K. Bartman and Michael A. Dikun, contend that the lower court improperly instructed the jury that an unlawful arrest is not a defense to the crime of aggravated assault on a police officer.[1] Further, appellants contend that they are entitled to a new trial on the charge of recklessly endangering

---

1. Act of December 6, 1972, P.L. 1482, No. 334, §1; 18 Pa.C.S. §2702(a)(3).

another person[2] because the Commonwealth introduced evidence which contradicted assertions it made in a bill of particulars.[3]

The charges stemmed from an altercation between appellants and several members of the State Police. Because appellants do not challenge the sufficiency of the evidence, a brief summary of the complicated and lengthy testimony will suffice. On May 8, 1974, appellants and a group of other youths were engaged in a volleyball game in Dry Tavern, Greene County, on a lot adjacent to the home of the parents of appellant-Dikun. At approximately 6:00 p.m., a neighbor, Richard Tekavec, arrived at his residence, and heard abusive language emanating from the area where the youths were playing volleyball. Because his wife was entertaining a Girl Scout Troop at the time, Tekavec went to the youths to ask them to refrain from using "obscene language." A scuffle ensued between Tekavec and three of the boys, and Tekavec returned to his home to telephone the State Police. Officer Francis Suppok responded to the call. When he arrived, Tekavec pointed out the three young men involved in the scuffle. Trooper Suppok asked them to accompany him to his police cruiser so that he could interview them concerning this incident. The testimony is unclear as to what exactly transpired after that, but several of the boys, along with several parents, did accompany Trooper Suppok to his car.

Trooper Suppok testified that he telephoned the Waynesburg Barracks in order to obtain assistance to make the arrests. There was only one officer on duty at the Waynesburg Barracks, however, as the other officers were playing a softball game against the Uniontown Barracks. The officer on duty telephoned the

---

2. Act of December 6, 1972, supra; 18 Pa.C.S. §2705.
3. See Rule 221, Pa.R.Crim.P. (19 P.S. Supp.).

Waynesburg Borough Police who drove to the ball park to inform the Waynesburg State Police officers that their assistance was needed in Dry Tavern. Nine officers arrived, none of whom were in uniform. It is undisputed that a confrontation ensued which lasted approximately fifteen minutes, and that two of the boys were injured seriously enough to require hospitalization. The Commonwealth's witnesses testified that they displayed badges and identified themselves as State Policemen before the altercation began. The defendants testified that they were unaware that these men were State Police officers and that they acted only in self-defense.

Six of the young men from the group were arrested and taken to the Waynesburg Barracks. All six were charged with disorderly conduct, simple assault, aggravated assault on a police officer, and recklessly endangering another person. Trial commenced on August 29, 1974, and was completed on September 13, 1974. Four of the defendants were acquitted of all charges; appellants were found guilty of aggravated assault and recklessly endangering another, but were acquitted of the remaining two charges. Following the denial of post-trial motions, appellant-Bartman was sentenced to a term of eight to twenty-four months' imprisonment on the aggravated assault charge, and a consecutive term of four to twelve months' imprisonment on the charge of recklessly endangering another person. Appellant-Dikun was sentenced to a term of nine to twenty-four months' imprisonment on the aggravated assault charges, and a consecutive term of six to twelve months' imprisonment on the recklessly endangering charge. The assertions of error in regard to the two charges will be discussed separately.

## I. *Aggravated Assault*

Appellants were indicted for a violation of 18 Pa.C.S. §2702(a)(3), which provides that "[a] person is guilty of

aggravated assault if he: ... (3) attempts to cause or intentionally or knowingly causes bodily injury to a police officer *making or attempting to make a lawful arrest ...*" (Emphasis added). The lower court, however, instructed the jury that "[t]he use of force is not justified under this Section when it is used to resist an arrest which the actor knows is being made by a peace officer, *although the arrest is unlawful ...*" (Emphasis added). The appellants contend that the court's charge was in direct conflict with the language of the statute, and, therefore, erroneous.[4]

We recently addressed a similar question in *Commonwealth v. Stortecky*, 238 Pa. Superior Ct. 117, 352 A.2d 491 (1975). In *Stortecky*, appellant contended that the lower court committed reversible error by failing to define "lawful arrest" in its instructions to the jury on the charge of aggravated assault on a police officer. In rejecting appellant's contention, our Court held that "[t]he Trial Judge was not required to place the question of the lawfulness of the appellant's arrest before the jury, that being a matter for his decision which is subject to our review. We find from the record that there was ample evidence supporting probable cause of the officers to arrest the appellant." 238 Pa. Superior Ct. at 120, 352 A.2d at 492. *Stortecky,* therefore, does not hold that the legality of the arrest is irrelevant; it merely holds that

---

4. Appellants specifically excepted to this portion of the charge. The attorney for appellant-Bartman addressed the court following the conclusion of the court's instructions: "... I take specific exception to the Court's charge that you cannot resist an arrest, regardless of its legality. This appears in the definition under the determination of justification, but under the law, it is in conflict with the charges that have been brought here, more particularly aggravated assault and battery, where the language lawful arrest is used ...." The attorney for appellant-Dikun joined in this exception. Thus, this issue is properly preserved for appellate review: "No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate ...." Rule 1119(b), Pa.R.Crim.P.

the issue may be decided by the court and does not have to be submitted to the jury.[5] The lower court correctly points out that the Crimes Code chapter on General Principles of Justification is in direct conflict with the language of §2702(3): "The use of force is not justifiable under this section: (i) to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful ..." 18 Pa.C.S. §505(b)(1)(i). This glaring inconsistency, however, cannot render the legality of the arrest irrelevant in a prosecution for aggravated assault on a police officer, because the legality of the arrest is an element of the crime and must be proved by the Commonwealth.[6] The disagreement between the Majority and Dissenting viewpoints in *Stortecky* goes only to the question of whether the judge or jury has to make the determination.

Therefore, the court below erred in instructing the jury that appellants could be found guilty of aggravated assault on a police officer, regardless of the legality of the arrest. Appellants' convictions on this charge must be reversed and remanded for a new trial.

## II. *Recklessly Endangering Another Person*

### A. *Appellant-Dikun*

Appellant-Dikun asserts three trial errors which he argues require reversal of his conviction for recklessly endangering another person. First, he claims that the

---

5. Two judges of our Court were of the opinion that the legality of the arrest is a material element of the crime of aggravated assault on a police officer and, therefore, should be decided by the jury. See Dissenting Opinion by HOFFMAN, J., in which SPAETH, J., joined. Therefore, the Court was unanimous in holding that the legality of the arrest must be shown before a conviction for aggravated assault on a police officer may be obtained.

6. See Act of December 6, 1972, supra; 18 Pa.C.S. §103.

court erred in instructing the jury that all the defendants produced character witnesses except Dikun. This contention, however, has been waived because appellant's counsel took only a general exception to the charge.[7] See Rule 1119(b), Pa.R.Crim.P. Second, appellant contends that the court's charge was prejudicial to the defendants because, in reviewing the testimony, the court fully reviewed the testimony of the police officers but gave only a summary of the lengthy testimony presented by the defendants. The attorney for appellant-Bartman, joined by appellant-Dikun's attorney, took a specific exception to this portion of the charge. It would appear, however, that this claim has also been waived. This asserted error was contained in appellant-Bartman's motion for a new trial, but not in appellant-Dikun's. Although appellant-Dikun's motion for a new trial stated that "[t]he Defendant reserves the right to state additional errors upon the completion of the transcript of the testimony[]", the issue is not discussed in the lower court's opinion, and has been abandoned on appeal by appellant-Bartman. It is reasonable to infer, therefore, that the issue was abandoned at oral argument on motions for new trial.

Appellant's final contention relates to the bill of particulars filed by the Commonwealth. Appellant contends that the court erred in allowing the Commonwealth to call witnesses beyond those listed in the bill of particulars. However, this contention is negated by the fact that the bill of particulars states that "[t]he names and addresses of all witnesses intended to be called by the Commonwealth for the case in chief as endorsed on the Indictment, are as follows: ... *and such other witnesses* as deemed advisable by the Commonwealth." Furthermore, as will be developed in the

---

7. Although appellant's counsel joined in the exceptions taken by counsel for appellant-Bartman, this objection was obviously not raised by Bartman's attorney.

next section, the testimony of two of the three witnesses not named in the bill of particulars was prejudicial only to appellant-Bartman. The testimony of the third witness was not sufficiently prejudicial to require reversal.

## B. *Appellant-Bartman*

Appellant contends that the court erred in allowing three witnesses to testify that appellant told his father to "leave [him] alone" and that "it's my fault, I caused the trouble." The basis for appellant's challenge is the bill of particulars. In their request for a bill of particulars, appellants asked the Commonwealth to state "whether or not any statements, admissions, or confessions allegedly made by any of the defendants will be introduced into evidence." The bill of particulars filed by the District Attorney provides that "there are no confessions or admissions *written or verbal*, in the hands of the Commonwealth, beyond the statements made during the altercation, some of which are too filthy to print." (Emphasis added).

Despite the Commonwealth's assertion, the bill of particulars was contradicted on five separate occasions during the trial, and resulted in conflicting rulings by the court. On cross-examination, Trooper Suppok, the arresting officer, revealed that the police did take statements from two of the defendants, neither of whom are involved in the instant appeal. The court properly denied a defense motion for a continuance because the statements were never introduced into evidence. The second reference to statements occurred during the direct examination of the next witness, Sergeant Barr, when the District Attorney attempted to introduce evidence that the various defendants had waived their constitutional rights. A defense objection was sustained by the court, but, as appellant's counsel points out, if the Commonwealth did not have statements it would have been unnecessary to introduce waivers.

The third reference to admissions by a defendant resulted in the introduction of a statement by appellant-Bartman. Sergeant Barr, testifying about the events at the police barracks when the six defendants were brought there, stated that the defendants were placed in separate rooms, and that Mr. and Mrs. Bartman were allowed in to see their son:

"Q. What occurred then?

"A. At this time, Mr. Bartman began to get quite disorderly and was asked to leave the station, which he refused to do to start with, but then his wife talked him into it, and he did leave the station.

"Q. What conversation took place at that time?

"A. Conversation by his son, the defendant, *Mr. Bartman had stated that it was all his fault, Dad; leave me alone; it's my fault; I caused the trouble.* He made this statement in front of his mother and father, and he told his Dad to leave him alone; *that he deserved whatever he gets, punishment,* and he stressed this to his father quite a few times until his father was asked to leave the room by us, and his mother was allowed in the room with her son and the officers.

"Q. Was an opportunity given of a written statement by any of the six defendants?

"A. Yes sir.

"Q. Did any of the six give statements?

"A. Yes sir.

"Q. Who were they?

"MR. STEGENGA [ATTORNEY FOR APPELLANT-BARTMAN]: We are going to object . . . . .

"MR. WAYCHOFF [DISTRICT ATTORNEY]: I will withdraw the question. You may cross-examine." (Emphasis added). Defense counsel then moved for the withdrawal of a juror on the basis that Sergeant Barr's testimony "was a direct contradiction to anything we asked for in the interrogatories." The court overruled the objection, but counsel asked "to go on record in this." The following colloquy occurred at side bar:

"MR. STEGENGA: At this time the defense moves for a mistrial on the ground that this is the third time testimony has been admitted in this case by witnesses wherein we have asked the Commonwealth if there were any statements, admissions or confessions made by any of the defendants which would be introduced into evidence, specifically asking that question in the questioning of Mr. Suppok. The Commonwealth answered [in the bill of particulars] there are no confessions or admissions, written or verbally, in the hands of the Commonwealth .... If the Court please, in behalf of the defendants, I can no longer state that the District Attorney does not know, and I think it is a direct action on his part to introduce into evidence prejudicial matters which should not be allowed. If it were just one time, maybe I could understand it, but this is the third time during this trial that this has come up, and I object.

"BY THE COURT: The Court overrules the objection, *directing the Commonwealth that it shall not produce any more testimony with respect to any statement that may have been made by the defendants in this case.*" (Emphasis added).

Despite the seeming clarity of the court's ruling, the Commonwealth later called Dorris Mae Cettin, the supervisor of the emergency room of Greene County Memorial Hospital, who was present when appellant was brought there for emergency treatment. Appellant's counsel requested an offer of proof:

"MR. WAYCHOFF: Commonwealth proposes by the witness on the stand to prove that she ... was present when the two boys were brought there for emergency treatment, and *to testify as to the remarks made by defendant, Bartman, particularly to his parents in the Emergency Room,* and this witness to be followed by a similar nurse at the hospital to detail what occurred, and what was said by the defendants that were there and their parents. I admit these two names were not on the bill of particulars, as they were unknown to the District

Attorney at the time of presenting the bill, and have been learned as available witnesses since the filing of the bill of particulars. Defense counsel was told of the two women at the hospital; and as I understand it, defense counsel were aware of these witnesses, they having interviewed the same persons. So, I consider this as no surprise to the defense.

"BY THE COURT:. When were these witnesses identified as being available to be called by the Commonwealth?

"MR. STEGENGA: After the start of this case, these witnesses were available ....

"BY THE COURT: The Court at this time overrules the motion; notes an exception to each defendant, and the witness may testify in accordance with the offer made by the Commonwealth ...." (Emphasis added). Both nurses were permitted to testify that appellant-Bartman told his father "I will take my punishment; I'll take what I deserve ..." (Emphasis added).

Normally, it would be reversible error to allow the Commonwealth to present evidence which contradicts the bill of particulars: "The function of a bill of particulars is to enable the accused to prepare for trial and to prevent surprise. Thus it has long been the law in Pennsylvania that the Commonwealth is restricted to proving what it has set forth in the bill." *Commonwealth v. Simione*, 447 Pa. 473, 477, 291 A.2d 764, 766 (1972) (footnotes omitted). The instant case, however, defies straight-forward disposition because the portion of the bill of particulars which was contradicted was gratuitous. Rule 310, Pa.R.Crim.P., provides that "[a]ll applications of a defendant for pretrial discovery and inspection shall be made not less than five days prior to the scheduled date of trial. The court may order the attorney for the Commonwealth to permit the defendant or his attorney ... to inspect and copy or photograph any *written confessions and written statements made by the defendant.*

*No other discovery or inspection shall be ordered except upon proof* by the defendant, after hearing, of exceptional circumstances and compelling reasons ...." (Emphasis added). If the Commonwealth would not be compelled to disclose oral statements and admissions on a defense motion for pretrial discovery, it certainly could not be compelled to do so pursuant to a request for a bill of particulars. This proposition is supported by the limited function served by a bill of particulars: "The purpose of bill of particulars is to give notice to the accused of the offenses charged in the bill of indictment so that he may prepare a defense, avoid surprise, or intelligently raise pleas of double jeopardy and the bar of the statute of limitations. See *Commonwealth v. Simione*, 447 Pa. 473, 291 A.2d 764 (1972); *Commonwealth v. Sabo*, 83 Pa. Superior Ct. 166 (1924); *United States ex rel. Stevenson v. Myers*, 234 F.Supp. 186 (E.D. Pa. 1964). It is not designed to perform the function of a discovery device and the Commonwealth's evidence is not a proper subject to which a petition for a bill may be directed.[8] *Commonwealth v. Senk*, 412 Pa. 184, 194 A.2d 221; vacated on other grounds, 378 U.S. 562, 84 S.Ct. 1928 (1963). Appellant's petition sought information which

8. We do not read *Commonwealth v. Koch*, 446 Pa. 469, 288 A.2d 791 (1972), as inconsistent with this statement. In *Koch*, appellant contended that the trial court improperly admitted into evidence admissions made by appellant to police officers while he was being taken from the preliminary arraignment to the county jail. Appellant asserted that it was prejudicial error for the Commonwealth not to disclose the existence of these admissions prior to trial. The Supreme Court held that "[t]he court properly dismissed this contention because appellant made no request for a bill of particulars prior to trial and successfully requested only appellant's written confession." 446 Pa. at 476, 288 A.2d at 794. We read this statement to encompass the situation presented in the instant case, that is, where a request is made and the Commonwealth answers. We do not interpret this statement as holding that had appellant asked the Commonwealth whether they possessed any oral admissions made by appellant, it would have been reversible error for the Commonwealth to refuse to answer.

was clearly not obtainable through a bill of particulars." *Commonwealth v. Mervin*, 230 Pa. Superior Ct. 552, 557-558, 326 A.2d 602, 605 (1974).[9] The issue in the instant case, therefore, is whether the Commonwealth should be bound by its answer, even though no response was required.

The lower court advanced two theories in support of its holding that the Commonwealth should not be so bound. The court stated that "there is some question as to what such a statement as this means, and whether or not it is an admission. The Court understood the defendant to be implying that it was his fault he was under arrest, and this is not the same thing necessarily as an admission of guilt." Whether or not this inference is justified, the jury could reasonably view the statement that "it was my fault," "I caused the trouble," and "I will take my punishment," as admissions of guilt. The prejudicial nature of this evidence is readily apparent, especially in light of the fact that four of the six defendants were acquitted of all charges.

The primary reason advanced by the court to justify the admission of these statements is that "the Rules [of Criminal Procedure] do not and cannot place upon the Commonwealth the duty of marshalling its entire case prior to trial in order to satisfy the slightest inclination of pre-trial need or benefit of the defendant, and in fact, such a Rule should not preclude some reasonable effort on the part of the defendant to prepare his own case, and in the course of doing so, such information, as this being well in the realm of knowledge of the defendant himself, and his witnesses, should not, in the slightest, counsel him to be surprised by the offer of an admission offered

---

9. The items sought in *Mervin* were police investigative records, investigation records of a newspaper reporter, names of all persons involved in the investigations, persons with whom all investigators communicated, and all statements of witnesses, documents, and physical evidence.

at trial. The statement was very openly and spontaneously made, and in the instance of the one made at the hospital, at least, was done so very publicly." There are two difficulties with the court's analysis. While Rule 221 and Rule 310 clearly prevent a defendant from discovering the Commonwealth's evidence prior to trial, the lower court ignored the fact that defense counsel was entitled to rely on a written statement of the District Attorney which was formally filed with the court. Although there was no active concealment or intentional misrepresentation on the part of the Commonwealth, the bill of particulars misled defense counsel into thinking that this highly prejudicial evidence did not exist. The Commonwealth's response unfairly lulled defense counsel into a false sense of security. Had the Commonwealth simply refused to state whether oral admissions would be introduced, no doubt defense counsel would have conducted his own investigation. The unfairness of the situation is compounded by the fact that the two nurses were not listed on the bill of particulars as potential Commonwealth witnesses. We cannot say with certainty that defense counsel would have adopted an identical trial strategy had the Commonwealth filed a different bill of particulars. This would be true, even if defense counsel had interviewed the two nurses. He was entitled to rely on the Commonwealth's assertion that no admissions would be introduced. For that reason, the court should have granted appellant's request for a mistrial.

The second difficulty with the court's analysis is the statement that because appellant made these admissions, appellant's counsel could not be surprised by their existence. Whether or not this assertion is true as a general matter, it is certainly unfair under the circumstances of this case. At the time these statements were made, the nurses testified that appellant's "right eye was swollen and discolored," "he had blood on his face," "he was given a prescription for pain pills," and

"he was also given a sling for his arm." It is certainly possible, if not probable, that appellant had no recollection of these statements after they were made.

Under all the circumstances, therefore, we hold that appellant-Bartman is entitled to a new trial on the charge of recklessly endangering another person.

To recapitulate: appellant-Bartman's convictions of aggravated assault and recklessly endangering another person are reversed, and a new trial ordered on both charges; appellant-Dikun's conviction of aggravated assault is reversed and a new trial ordered on that charge alone; appellant-Dikun's conviction of recklessly endangering another is affirmed, but the sentence is vacated and the case is remanded for resentencing on that charge. See *Commonwealth v. Lockhart*, 223 Pa. Superior Ct. 60, 296 A.2d 883 (1972).

VAN DER VOORT, J., joins in this opinion as to appellant-Dikun, and dissents from this opinion as to appellant-Bartman.

JACOBS and PRICE, JJ., dissent.

CONCURRING OPINION BY SPAETH, J.:

I join in Judge HOFFMAN'S opinion except as it states that the Commonwealth is obliged to disclose only written admissions, not oral ones.

This statement is, or so it seems to me, *dictum*. Moreover, it is contrary to §2.1(a)(ii) of the ABA Standards Relating to Discovery and Procedure before Trial, Compilation, p. 255 (1974), which provides that (with exceptions not here pertinent) the prosecutor shall disclose to defense counsel "any written or recorded statements and the substance of any oral statements made by the accused."

It is not at all uncommon for a prosecutor to have evidence of both an oral and written admission. The typical case is where the accused makes an oral admission to the investigating detective, who then calls in a stenographer who reduces the admission to a

writing, which the accused signs. To read Rule 310 as requiring the prosecutor to disclose only the written admission seems to me at least arguably arbitrary. Nor am I sure that *Koch* is to be read so narrowly as in footnote 8 of Judge HOFFMAN'S opinion.

On all of these issues of discovery I wish to reserve judgment. Here it is sufficient to hold that the Commonwealth was bound by its answer that there were no admissions, written or oral.