426 A.2d 1111

COMMONWEALTH of Pennsylvania

v.

Terry A. DREIBELBIS, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 17, 1980.

Decided March 13, 1981.

John A. Boccabella, Wyomissing, for appellant.

Charles M. Guthrie, Jr., Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

This is an appeal from an order imposing judgment of sentence entered October 24, 1978 in the Court of Common Pleas of Berks County, Pennsylvania.

Appellant, Terry A. Dreibelbis, was, on October 21, 1977, convicted by a jury of murder of the first degree and various lesser offenses. Post-verdict motions for new trial and in arrest of judgment were filed, argued, and on July 27, 1978, denied. On October 24, 1978, appellant was sentenced to imprisonment for life on the count charging murder of the first degree and to consecutive terms of imprisonment of one-to-two years and ten-to-twenty years on the lesser offenses. Hence this appeal.

Appellant urges upon us nine assignments of error; among them, and to which we first turn, is a claim that the evidence adduced at trial was insufficient to support the verdicts. It is well settled that in passing upon a claim of insufficiency we must view the evidence in the light most favorable to the verdict winner. The evidence is sufficient if, accepting as true all the evidence and all reasonable inferences therefrom upon which, if believed, the jury could have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that appellant is guilty of the crimes for which he was convicted. *Commonwealth v. Horne*, 479 Pa. 496, 388 A.2d 1040 (1978).

Moreover, it is the province of the trier of fact, who is free to believe all, part or none of the evidence, to pass upon the credibility of witnesses and the weight to be accorded the evidence. *Commonwealth v. Valderrama*, 479 Pa. 500, 388 A.2d 1042 (1978). Finally, evidence may be sufficient to

convict even though wholly circumstantial. *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978).

The Commonwealth's evidence at trial showed the following: On February 19, 1973, Frank and Davidina Szabo, husband and wife, returned with their children, Michael and Frances, to their farmhouse on Route 422 in Amity Township, Berks County, Pennsylvania, from a short family vacation. At approximately 7:15 p. m. on that date, a man subsequently identified as William Kahley approached the kitchen door of the Szabo residence. Michael Szabo, at that time fifteen years old, answered the door and admitted Kahley. Kahley, armed with a pistol, directed Michael Szabo to raise and lower a window shade several times. After Michael Szabo did as ordered, a second man, wearing a ski mask and also armed with a pistol, entered the kitchen. The men asked for money which Davidina gave them from her purse and rosary case. Subsequently shots were fired which struck and wounded Michael Szabo and struck and killed Frank Szabo. Doctor Mark Reed, Director of Pathology of Reading Hospital, testified that his post-mortem examination of the body of Frank Szabo revealed that the victim had been shot four times in the neck and chest. The cause of death was determined to have been massive hemorrhage caused by bullet wounds of the chest.

Gerald Styers, Pennsylvania State Police ballistics expert, testified his analysis of the four bullets removed from the body of the victim demonstrated they had been fired from two different .38 caliber handguns.

On the date of the instant crime appellant resided in Reading, Pennsylvania, with Joan Sehl Manwiller. Ms. Manwiller testified at trial that appellant was out part of the evening of February 19, 1973. Appellant returned to the apartment he shared with Manwiller after dark on that date accompanied by Kahley, packed some clothing with Manwiller's assistance, and left. Appellant never returned to the Reading apartment. Ms. Manwiller further testified she owned a black vinyl folder which she kept in a bureau drawer. At some point after appellant left her apartment

Manwiller discovered the folder was missing. A black vinyl folder identical to Ms. Manwiller's was carried by Kahley at the time of the instant crimes and was left behind at the Szabo residence. Ms. Manwiller also testified she was the owner of a 1966 green Volkswagen automobile, a set of keys to which both she and appellant possessed.

Calvin Rice testified for the prosecution that he was an employee of Templin's Amoco Station, located on Route 422 approximately one-quarter mile from the Szabo residence. Mr. Rice testified that at approximately 7:30 or 8:00 p. m. on February 19, 1973, a green Volkswagen automobile occupied by two persons was driven into his service station. He could identify neither.

Mrs. Roberta Chesonis testified at trial that she was the wife of Thomas Chesonis, nicknamed "Patch head." She testified that appellant and William Kahley, both of whom she knew, arrived at her home on a night in February, 1973, in a green Volkswagen. Mrs. Chesonis overheard a conversation among appellant and Kahley, whom she knew to be nicknamed "Sloopy," and her husband. Mrs. Chesonis testified the three men argued concerning a "folder" which they had "forgotten." Thomas Chesonis said "Why did they leave any witnesses, they should have killed everyone." Mrs. Chesonis testified appellant and Kahley changed out of their clothes and burned the clothing they had been wearing when they arrived. While in the Chesonis home appellant and Kahley cut and dyed their hair and shaved their beards.

Ms. Patty Anderson testified for the prosecution that she dated appellant in Bridgeport, Connecticut in 1975 and 1976. Ms. Anderson testified that in April, 1976, she questioned appellant concerning his background. In response to her inquiries appellant told Ms. Anderson that "him and his friend, a guy named Sloopy, went over to this man's house and the man supposedly owed them some money or something, and they went to pick it up and the guy didn't want to pay them and so, I guess, they were looking for something that was worth that much. I don't know exactly what they were doing, but the man was reaching for a knife or

something like that and they shot him and left." Ms. Anderson further testified appellant told her he and Sloopy went to Patch head's house where "they buried their guns and they died their hair and they shaved."

■ We find, in light of our standard of review, that the evidence adduced at trial was, if believed by the jury, sufficient in law to support the verdicts. Appellant's claim to the contrary is without merit.

Appellant argues the trial court erred in permitting the testimony of Roberta Chesonis and Patty Anderson regarding his admissions. First appellant contends the admission of the disputed testimony contravened the Commonwealth's Bill of Particulars. In appellant's timely filed request for a Bill of Particulars, the following was included:

"4. Please state whether any oral or written statements, confessions or admissions were made by the Defendant with respect to the said alleged offense or offenses. If so, please indicate the date, time and location where such statement was made and the person, persons or agency who now have such statement in their possession, control and custody."

In response the Commonwealth answered as follows:

"4. The Commonwealth avers that it is not in possession of any statements or admissions by the Defendant which were the result of custodial interrogation."

Appellant now argues the Commonwealth was bound by its response and was barred from introducing any admissions.

■ The trial court found, and appellant does not here dispute its finding that appellant's request for statements in a bill of particulars was improper. Indeed, the request was improper. A bill of particulars is intended to give notice to the accused of the offenses charged in the indictment so that he may prepare a defense, avoid surprise, or intelligently raise pleas of double jeopardy and the statute of limitations. *Commonwealth v. Simione*, 447 Pa. 473, 291 A.2d 764 (1972). A bill of particulars is not a substitute for discovery and the

Commonwealth's evidence is not a proper subject to which a petition for a bill may be directed. *Commonwealth v. Davis,* 470 Pa. 193, 368 A.2d 260 (1977).

However, appellant argues that even though his request was improper, he was entitled to rely upon the Commonwealth's response. Appellant directs us to a case decided in the Superior Court, *Commonwealth v. Bartman,* 240 Pa. Super. 495, 367 A.2d 1121 (1976), as support for his contention. *Bartman* is, it is true, similar to the instant case. There a request for a bill of particulars had been filed in which the Commonwealth was asked "whether or not any statements, admissions, or confessions allegedly made by any of the defendants will be introduced into evidence." The Commonwealth replied "there are no confessions or admissions written or verbal in the hands of the Commonwealth, beyond the statements made during the altercation...". Nevertheless, at trial several prosecution witnesses gave testimony concerning admissions made by the accused.

The Superior Court correctly observed that the requested information was beyond the scope of a bill of particulars and the Commonwealth would have been justified in not responding. The court held, however, that even though not required to respond to appellant's request, the Commonwealth having done so was bound by its answer.

In our view the distinction between *Bartman* and the instant case is apparent. In *Bartman* the Commonwealth's response was an all-inclusive statement that it possessed no admissions by the accused. Instantly the Commonwealth's response was much more limited: the prosecution possessed no confessions or statements which were the result of custodial interrogation. Although clearly not required to respond to appellant's request, the Commonwealth nevertheless did so in narrowly circumscribed terms. Even binding the Commonwealth to its answer, we find in the record no instance where the terms of that answer were contravened. The Commonwealth produced no statements which were the product of custodial interrogation. At no time did the prosecution indicate whether or not it possessed non-custodi-

al admissions. We conclude the trial court properly found the proffered testimony to be admissible.

■ Second, appellant argues the testimony of Ms. Anderson and Mrs. Chesonis concerning appellant's admissions should have been excluded as irrelevant. This contention is predicated principally upon appellant's interpretation of the holding in *Commonwealth v. Turner*, 389 Pa. 239, 133 A.2d 187 (1957). That opinion was written in a case where the appellant had been five times tried, five times convicted of murder of the first degree, and had five times appealed. After four reversals the only substantial evidence remaining in the Commonwealth's case was the testimony of two detectives who recounted alleged statements of the accused which they said they had overheard. On the fifth appeal this court reversed again, holding that the alleged statements of the accused, admitted through the testimony of the detectives, "were not so conclusive in their import as to warrant a finding by the jury beyond a reasonable doubt that they constituted an admission [of guilt]. . . . The evidence in this case was patently far from sufficient to justify the jury's verdict." *Id.*, 389 Pa. at 266–267, 133 A.2d 187.

Thus, while it is true the admissions in *Turner* were troublesome in that they lacked specificity or were inconclusive, it is equally clear that we considered that to bear upon the weight to be accorded the evidence rather than its admissibility. So, too, in the instant case, appellant's relevancy argument is one which in fact contests the weight of the evidence. We find no error in the admission of the testimony at issue.

Next appellant asserts the trial court erred in admitting the testimony of Mrs. Roberta Chesonis. Mrs. Chesonis testified at trial concerning conversations held among her husband, appellant and appellant's confederate, Kahley. The conversations about which Mrs. Chesonis testified were held outside her presence; she was either in another room or upstairs. None of the conversation was directed to her. Moreover, although the witness knew the participants in the conversations, she could identify by voice only those state-

ments which had been uttered by her husband. Appellant now argues the testimony of Mrs. Chesonis was inadmissible hearsay and further that it lacked the specificity required to lend it relevancy.

The trial court concluded the testimony was properly received under the exception to the hearsay rule which permits the admission of statements by a co-conspirator. This exception allows statements by a co-conspirator to be admitted against an accused if the statements are made during the conspiracy, in furtherance thereof, and where there is in other evidence of the existence of a conspiracy. *Commonwealth v. Garcia*, 478 Pa. 406, 387 A.2d 46 (1978). The co-conspirator exception applies even where no party has been formally charged with conspiracy. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975). Moreover, a conspiracy, for purposes of the co-conspirator exception to the hearsay rule, may be inferentially established by showing the relation, conduct or circumstances of the parties, *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976).

The evidence adduced at trial established that appellant and William Kahley conspired to kill Frank Szabo. The Szabo killing did not terminate the conspiracy, and in their flight to the Chesonis home and their efforts to conceal their identities, the conspirators acted in furtherance thereof. *Commonwealth v. Wilson*, 394 Pa. 588, 148 A.2d 234 (1959); 3 Wharton's Criminal Evidence § 643 (13th ed. Torchia 1973). The evidence showed that Thomas Chesonis provided appellant and Kahley refuge in his home; on at least two occasions Chesonis discussed the Szabo murder with them. While at Chesonis' home they shaved, cut and dyed their hair, changed their clothes, burned their old clothing and buried their weapons. When appellant and Kahley determined to flee Berks County it was Chesonis who transported them to Philadelphia. Chesonis agreed to assist and in fact did assist appellant and Kahley in avoiding apprehension; Chesonis conspired to commit an unlawful act. Because there was shown to have been a conspiracy involving appellant, Kahley and Chesonis, and because the statement was

made during the existence and in furtherance of the conspiracy, it was properly admitted at trial.

Next appellant complains the trial court erred in permitting the Commonwealth to cross-examine and impeach its own witness. At trial the Commonwealth called Roberta Chesonis, whose testimony has been recounted *supra*. Following several preliminary questions the prosecutor pleaded surprise and requested leave of court to proceed as if on cross-examination. This request was denied by the trial court. Appellant now asserts the prosecution nevertheless cross-examined its witness, and notes particularly that the defense was required to object to leading questions thirteen times (Brief for appellant at 17).

■ Preliminarily, we note that our review of the record discloses not thirteen but seven objections to the examination of Mrs. Chesonis which complained of leading questions; of these two were sustained.[1] A leading question has been defined as one which puts the desired answer in the mouth of the witness. *Kelly's Estate*, 399 Pa. 153, 159 A.2d 739 (1960). Our review of the questions to which counsel objected as leading convinces us the court properly permitted the questions. It is true certain of the questions might have been more artfully phrased, but they were not leading. On the record before us we conclude the prosecution did not impermissibly attempt to cross-examine its witness.

■ Appellant's fifth assertion of error charges the trial court erred in denying his motion for mistrial made as a

1. The remaining five questions are:

"Q: Mrs. Chesonis, I ask you specifically whether on February 19, 1973, you saw Terry Dreibelbis at your home in Shoemakersville? . . .

"Q: Do you remember seeing William Kahley, also known as Sloopy with Terry Dreibelbis at your home on a night in February? . . .

"Q: Do you remember them having some conversations between themselves and your husband on that night when they came together? . . .

"Q: What, if anything, did they do with the clothes they had changed out of? . . .

"Q: Do you or do you not recall them coming to your home in February of 1973?"

result of alleged prosecutorial misconduct. Appellant argues the prosecutor engaged in unfairly prejudicial conduct during his closing argument. One of the defense theories advanced at trial was that it was not appellant but another who had accompanied William Kahley to the Szabo residence. That other person was Joseph Molino, who was dead at the time of trial. In response to this defense theory the prosecutor argued to the jury:

"He comes here now almost four years later to tell us about Mr. Molino, also known as Stumpo, with a clear and absolute recollection where the Commonwealth witnesses never have any and what do they come with? The name of a man, Joseph Molino, Stumpo, and how convenient for Mr. Cichowicz and for Mr. Hodge and, indeed, for Mr. Dreibelbis. How convenient because what? Joseph Molino died in 1974 and cannot come in here to say, 'Hey, man'—I would assume that's his language—'I didn't do that and I never said I did.' But wasn't it convenient to pick a man who couldn't do that, a man we couldn't find, no matter how hard we tried because he never existed."

The Commonwealth had established that Molino had died in 1974. Appellant argues the prosecutor erred in arguing to the jury that if Molino could have testified he would have contravened the defense theory. A timely objection to the offending remarks was sustained and a cautionary instruction given. We conclude no more was required.

■ Clearly the prosecution is permitted to emphasize to the jury that the party whom the defense is attempting to portray as the actor is dead. If the prosecutor's argument here went further and implied to the jury that Molino would have testified in a certain fashion, that impropriety is minimal. A new trial is not mandated every time a prosecutor makes an intemperate or improper remark. *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977). To constitute reversible error the language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant, so that they could not weigh the evidence and render a true

verdict." *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975). We perceive no error in the denial of the Motion for Mistrial.

Appellant's sixth and seventh claims of error concern the relevancy of the testimony of two Commonwealth witnesses: Calvin Rice and Joan Manwiller. Manwiller testified she was the owner of a 1966 green Volkswagen automobile, to which appellant had a set of keys. Rice testified that on the night of the crime, at approximately 7:30 p. m., a green Volkswagen with two men in it stopped at the service station where he was employed. The service station was located approximately one-half mile from the scene of the crime. Appellant argues this testimony was irrelevant.

"Evidence is relevant if it tends to establish some fact material to the case or tends to make the fact at issue more or less probable." *Commonwealth v. Davenport*, 462 Pa. 543, 342 A.2d 67 (1975). Clearly the testimony of Rice and Manwiller was relevant. Appellant's complaint is actually directed at the weight to be accorded that evidence. That, however, is a function of the jury, which has decided the issue adversely to appellant. There was no error in admitting the testimony.

Next appellant contends the court erred in permitting improper rebuttal testimony by Commonwealth witness Patty Anderson. Appellant's complaint is, however, not one of improper rebuttal, but rather of improper redirect examination. During the cross-examination of Ms. Anderson the defense attempted to impeach the credibility of the witness by exposing possible bias. Toward this end defense counsel questioned the witness concerning any threats of prosecution which may have been made to her. Most of this questioning concerned a threat of prosecution which had been made by an F.B.I. agent. However counsel also inquired: "Isn't that your motive for testifying, you have been threatened by other people in connection with this case?"

On redirect examination the prosecutor asked the following questions?

"Q: Miss Anderson, did I or any member of the District Attorney's staff at any time tell you what to testify to? . . .

"Q: Now, Miss Anderson, did I or any member of the District Attorney's staff of this county tell you what to testify to? . . .

"Q: Did I or any member of our staff threaten you with prosecution? . . .

"Q: Did Trooper Barrie Pease? . . .

"Q: Did any other member of the Pennsylvania State Police? . . .

"Q: Did any member of the Amity Township Police Department? . . . "

Appellant contends this was improper redirect examination in that it went beyond the scope of cross-examination.

 The scope of redirect examination is largely within the discretion of the trial court. *Commonwealth v. Stokes*, 475 Pa. 312, 380 A.2d 370 (1977). Moreover, when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit re-direct on that issue in order to dispel any unfair inferences. *Commonwealth v. Lewis*, 472 Pa. 235, 372 A.2d 399 (1977). Instantly appellant raised the issue of bias. While it is true appellant emphasized the conduct of an F.B.I. agent, inferences that other parties had threatened the witness with prosecution could also have been drawn. The Commonwealth was entitled to dispel such inferences on re-direct.

 Finally appellant claims the trial court erred in refusing to permit an interview of a Commonwealth witness by defense counsel prior to cross-examination. Appellant has provided us with no authority which would authorize such a procedure. The trial court ruled such a procedure would amount to cross-examination of a witness in the jury's absence and without opposing counsel being able to object. We agree; appellant's claim of error is without merit.

The judgment of sentence is affirmed.