J-S22025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY HOLMES | : | |
| | : | |
| Appellant | : | No. 1685 MDA 2018 |

Appeal from the Judgment of Sentence Entered April 5, 2018
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001211-2016

BEFORE: SHOGAN, J., DUBOW, J., and PELLEGRINI*, J.

MEMORANDUM BY DUBOW, J.: **FILED AUGUST 09, 2019**

Appellant, Anthony Holmes, appeals from the April 5, 2018 Judgment of

Sentence entered in the Centre County Court of Common Pleas following his

conviction of Sexual Assault. After careful review, we affirm.

We glean the following factual and procedural history from the certified

record. In the late evening of July 10, 2015, the Victim, Kathleen Mangus, and

other friends attended the Arts Festival at State College, Pennsylvania. The

Victim patronized bars and drank alcohol while at the Festival. At some point

in the evening, the Victim blacked-out while drinking a beer at a bar.

In the early morning of July 11, 2015, when the Victim regained

awareness, she was standing outside a black sedan in a wooded area of a

park. She was disoriented and panicked. A discussion between the Victim and

Appellant intensified, and when the Victim asked Appellant to leave the area,

_____
* Retired Senior Judge assigned to the Superior Court.

he punched her in the face, breaking her nose and knocking her to the ground. He told the Victim to stop crying and demanded that she remove her pants. The victim protested. Appellant proceeded to hold her down and sexually assault her. After the assault, Appellant stated, "I can't believe this. I can't believe this is how tonight went. I can't believe this." N.T. Trial, 1/30/18, at 87.

Appellant and the Victim then entered the car to leave the park. The Victim informed Appellant she could not find her cell phone. Appellant attempted to find the phone by calling it; they were unable to locate the phone.

Appellant drove them back into town. Once the Victim recognized that they were near Mangus's apartment, she asked Appellant to drop her off. As she was leaving the car, Appellant retrieved the Victim's cell phone from the driver's side floor and gave it to her.

The Victim arrived at Mangus's apartment around 5:00 AM. She woke Mangus and informed her of the assault; Mangus then called the police. Officer Martin Hanes responded and escorted the Victim to the Mount Nittany Medical Center where an examiner performed a vaginal swab extraction.[1]

---

[1] A forensic analysis of the swab performed in February 2016 found DNA material matching Appellant's DNA profile.

On July 23, 2015, Detective John Aston recorded a phone call the Victim placed to Appellant at the Detective's behest.[2] During the phone conversation, the Victim asked Appellant about the evening of the Arts Festival. Appellant told the Victim that she had the wrong number and he had not been at the Arts Festival, and hung up. The Victim then sent Appellant a text message. Appellant never responded to the Victim's text message. That same day, Appellant cancelled his cell phone service with T-Mobile. He later obtained a new cell phone number with a new provider.

In July 2016, Appellant was charged with Rape, Sexual Assault, two counts Indecent Assault, Simple Assault, and Harassment.[3] A jury trial commenced on January 29, 2018, at which the parties stipulated to the DNA lab results, and to the fact that Appellant cancelled his cell phone number with T-Mobile on July 23, 2015 and subsequently obtained a new cell phone number with Verizon. The Commonwealth presented testimony from, *inter alia*, the Victim, Detective Aston, and Kathleen Mangus. The Victim testified about the events of July 10 and 11, 2015, and the July 23, 2015 phone call and text message to Appellant. Detective Aston discussed his investigation of the case, including compiling data related to Appellant's and the Victim's cell phones.

---

[2] The Commonwealth retrieved Appellant's phone number from the Victim's received calls log from the early morning hours of July 11, 2015.

[3] 18 Pa.C.S. § 3121, 18 Pa.C.S. § 3124.1, 18 Pa.C.S. § 3126, 18 Pa.C.S. § 2701, and 18 Pa.C.S. § 2709, respectively.

Mangus testified about the events of July 10 and 11, 2015, and her ensuing discussions with Detective Aston about the case. Appellant's attorney vigorously cross-examined Mangus. Appellant presented testimony from, *inter alia*, four character witnesses. After closing arguments, the trial court instructed the jury, over Appellant's objection, about considering Appellant's actions after the assault as consciousness of guilt.

On January 30, 2018, the jury found Appellant guilty of Sexual Assault.[4] Following the jury trial, the court found Appellant guilty of Harassment. On April 5, 2018, the court sentenced Appellant to, *inter alia*, four and one-half to nine years of imprisonment. Appellant filed a Post-Sentence Motion, which the trial court denied.

Appellant timely appealed. Appellant filed a Pa.R.A.P. 1925(b) Statement. The trial court referred this Court to its opinion denying Appellant's Post-Sentence motion in lieu of drafting a Rule 1925(a) Opinion.

Appellant presents the following questions for our review:

1. Did the lower court abuse its discretion by permitting the Commonwealth to repeatedly elicit improper opinion evidence at trial that the [Victim] in this matter was truthful in her allegations that she was attacked and raped by [Appellant]?

2. Did the lower court, having found that [Appellant] did not know he was wanted by the police, abuse its discretion by giving the jury a consciousness of guilt instruction?

---

[4] The Commonwealth withdrew the two counts of Indecent Assault prior to trial. The jury found Appellant not guilty of Rape and Simple Assault.

Statement of the Questions Involved, Appellant's Br. at 5.

**Admissibility of Evidence**

In his first claim, Appellant asserts that the trial court abused its discretion by permitting the Commonwealth to use Mangus's re-direct testimony to bolster the Victim's credibility about the events that occurred on the evening of July 10, 2015, and early morning of July 11, 2015. Appellant's Br. at 13. He asserts that the Commonwealth elicited improper opinion evidence, citing to portions of Mangus's re-direct testimony. Appellant's Br. at 9-11, 13-16.

The admissibility of evidence and scope of re-direct examination is within the discretion of the trial court. *Commonwealth v. Dreibelbis*, 426 A.2d 1111, 1117 (Pa. 1981); *Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010). "[A] reviewing court will not reverse the trial court's decision absent a clear abuse of discretion." *Young, supra* at 924. To be admissible, evidence must be relevant. *See* Pa.R.E. 401, 402. However, relevant evidence may be excluded if the court determines that its probative value is outweighed by the risk of unfair prejudice. Pa.R.E. 403. "'Unfair prejudice' means a tendency to suggest [a] decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id.*, cmt. "Moreover, when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit re-direct

on that issue in order to dispel any unfair inferences." **Dreibelbis, supra** at 1117.

Appellant's claim challenges Mangus's testimony provided in response to Appellant's counsel's vigorous cross-examination. On cross-examination, defense counsel questioned Mangus about her interactions with Appellant's investigator and with Detective Aston. Counsel questioned Mangus about the messages Appellant's investigator left for her and why she did not return his phone calls to discuss the case. N.T. Trial, 1/29/18, at 65-66. He then questioned Mangus about how soon she discussed the case with Detective Aston after Appellant's investigator had contacted her. **Id**. at 66-67. On re-direct, Mangus testified that she knew something bad had happened to the Victim, the Victim was attacked and raped, and that she wanted nothing to do with Appellant's investigator because she did not know the investigator. **Id.** at 76-79.

The trial court determined that the Commonwealth's questions and Magnus's testimony on re-direct examination were in response to defense counsel's questions implying that Magnus held a bias against defense counsel's investigator, not to bolster victim's testimony. Trial Ct. Op. at 4. The court further opined that any harm from the testimony was minimal. **Id.** at 4-5.

We agree with the trial court's conclusion. On cross-examination, defense counsel attacked Mangus's credibility by attempting to expose bias.

Defense counsel asked if Appellant's investigator contacted her and why she did not respond to his requests to speak with her. Further, defense counsel's questioning contrasted Magnus's reluctance to speak with Appellant's investigator with her willingness to speak with the Commonwealth's detective. Her re-direct testimony explaining why she was reluctant to speak with Appellant's investigator constituted proper and relevant evidence responding to the defense counsel's implication of bias raised on cross-examination. **See**

**Dreibelbis, supra** at 117.

Moreover, we discern no error in the trial court's consideration of the probative value of this testimony against its prejudicial impact. Although Appellant avers Magnus's words describing the attack as rape were prejudicial, the jury's finding Appellant not guilty of rape evidences the minimal prejudicial impact of Mangus's re-direct testimony.

We conclude the trial court did not abuse its discretion in admitting Mangus's testimony on re-direct.

## Jury Instruction

In his second claim, Appellant avers that the trial court abused its discretion in giving the following consciousness of guilt jury instruction:

> There was evidence tending to show that the defendant cancelled his [cell] phone after [the Victim] called him and he denied being at the Arts Festival. If you believe this evidence, you may consider it as tending to prove the defendant's consciousness of guilt. You are not required to do so.

N.T., 1/30/18, at 231-32. Appellant contends that the instruction was improper because there was no evidence presented that he had been called

by the police or that he was aware that he was the subject of an investigation at the time he changed his phone number. Appellant's Brief at 19-21.

We review a challenge to a jury charge for an abuse of discretion. *Commonwealth v. Greer*, 951 A.2d 346, 354 (Pa. 2008). "A jury instruction is proper if supported by the evidence of record." *Commonwealth v. Clark*, 961 A.2d 80, 92 (Pa. 2008).

The conduct of an accused following a crime is admissible as tending to show guilt. *Commonwealth v. Hughes*, 865 A.2d 761, 792 (Pa. 2004). Direct evidence is not required to establish a defendant's actual knowledge that he was being sought by the police for a crime. *Commonwealth v. Whack*, 393 A.2d 417, 419-20 (Pa. 1978). A defendant's knowledge may be inferred from the circumstances following his crime. *Commonwealth v. Thoeun Tha*, 64 A.3d 704, 714 (Pa. Super. 2013). *See Commonwealth v. Jones*, 570 A.2d 1338, 1349 (Pa. Super. 1990) (concluding that a jury instruction on consciousness of guilt was proper where defendant's refusal to give his identification after a car accident and then fled demonstrated that he had reason to know that he may be suspected in connection with a murder that occurred four days prior to the accident).

The Victim testified that she contacted Appellant about the events at the Arts Festival. Appellant denied attending and hung up. Appellant ignored the Victim's text message and then cancelled his cell phone service. From these facts, it was reasonable for the trial court to infer that Appellant was

attempting to prevent the Victim from contacting him and thus, there was sufficient evidence to charge the jury that Appellant's efforts to prevent the Victim from contacting him established Appellant's consciousness of guilt.

Accordingly, we conclude that the trial court did not abuse its discretion in providing the consciousness of guilt instruction.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2019