J-S01031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
    :        PENNSYLVANIA
    :
    v.    :
    :
    :
    :
WILLIE C. PETERSON, III    :
    :
    Appellant    :    No. 713 MDA 2020

Appeal from the Judgment of Sentence Entered February 25, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007734-2017

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED JANUARY 22, 2021**

Appellant, Willie C. Peterson, III, appeals from the judgment of sentence entered in the Court of Common Pleas of York County following his conviction by a jury on the charge of first-degree murder, 18 Pa.C.S.A. § 2502(a). After a careful review, we affirm.

Appellant was arrested in connection with the May 28, 2017, homicide of Edwin Pacheco-Ruiz. Represented by counsel, Appellant proceeded to a jury trial. The trial court has aptly summarized the testimony offered at trial as follows:

> On May 28, 2017, [at] around 9:33 PM, York City Police were dispatched to an [incident] in the area of…East Princess St[reet] due to the result of a possible shooting. The driver of the

_____

[*] Former Justice specially assigned to the Superior Court.

vehicle was located in the driver's seat and was identified as Edwin Pacheco-Ruiz ("Victim").

At the time of the [incident], there was a front seat passenger, Lucille Bishop ("Lucy"), Victim's girlfriend. Lucy was present inside Victim's vehicle during the shooting. N.T. Jury Trial, 01/14/2020, at 208. [Lucy testified that] after Victim had dropped his son off with Lacresha Cole-Carter [at] around 9:00 PM, [Lucy and Victim] were heading to Falloons, [which is] a bar. *Id.* at 207-08. On their way to the bar, [Appellant] signaled Victim to stop on the street in front of a white church. *Id.* at 208-09. Victim stopped the car and let [Appellant] into the car. *Id.* at 209.

Lucy was sitting in the front passenger seat. *Id.* at 208. [Appellant] was seated in the backseat behind Victim. *Id.* at 211. Lucy stated that when [Appellant] got into the car, he [said] that "he had five and he was going to hit." *Id.* Lucy witnessed [Appellant] shoot Victim in the head. *Id.* at 213-14. She heard two shots "just one after the other." *Id.* at 213. She saw the gun. *Id.* at 214. After Victim was shot in the head, he fell over onto Lucy. *Id.* Victim's car eventually crashed into a house. *Id.* at 215. Lucy was able to get out of the car. *Id.*

Lucy [testified] that Victim identified the shooter as "Homer." Lucy stated that Victim "told him not to do it." *Id.* at 211-12. Lucy emphasized that Victim said "not to do it" "over and over again," and called him "Homer" "so many times." *Id.* at 212. She further specified that Victim said Homer "probably like twenty times." *Id.* at 228. Through further investigation, "Homer" was identified as Appellant.[1]

On May 30, 2017, Victim…was pronounced dead from his injuries at 11:40 AM.

Trial Court Opinion, filed 7/24/20, at 2-3 (footnote added).

At the conclusion of the trial, the jury convicted Appellant of the offense indicated *supra*, and on February 25, 2020, Appellant was sentenced to life in prison. At the conclusion of the sentencing hearing, the trial court appointed

---

[1] At trial, Lucy positively identified Appellant as the person who shot Victim. *Id.* at 218-19.

new counsel to represent Appellant, and after Appellant requested permission to file a post-sentence motion *nunc pro tunc* with the assistance of new counsel following the filing of the transcripts, the trial court specifically indicated Appellant had "10 days from the filing of the transcripts to file post-sentence motions[.]"[2]  N.T., 2/25/20, at 10.

Following the filing of the trial transcripts, Appellant filed a counseled post-sentence motion within ten days thereof, and on April 14, 2020, the trial court denied Appellant's post-sentence motion. On May 14, 2020, Appellant filed a counseled notice of appeal. All Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following sole claim in his "Statement of the Question Involved" (verbatim):

> The trial court erred in permitting a crime scene technician to render an opinion as to issues surrounding the ability for a forensic lab to conduct DNA analysis of samples taken in this case.  Such testimony was expert in nature, the officer was not qualified as such an expert, and the testimony was beyond the scope of his expertise as a crime scene technician.

Appellant's Brief at 6.

_____

[2] The trial court had the authority to permit Appellant to file a post-sentence motion *nunc pro tunc* upon receipt of the trial transcripts.  **See Commonwealth v. Batty**, 169 A.3d 70, 72 n.4 (Pa.Super. 2017) (holding trial court did not err by permitting counsel to file a post-sentence motion *nunc pro tunc* after counsel requested such relief due to counsel's recent appointment); **Commonwealth v. Moore**, 978 A.2d 988, 991 (Pa.Super. 2009) (holding trial court had authority to grant motion for extension of time to file post-sentence motion filed eight days after imposition of the defendant's judgment of sentence).

On appeal, Appellant contends the trial court erred in permitting Commonwealth witness Detective Christopher Perry, who was the crime scene technician responsible for collecting fingerprint and DNA samples from the subject vehicle where the murder occurred, to offer an opinion on redirect examination as to whether it is possible to extract DNA evidence from latent fingerprint samples. Appellant contends the expert opinion was beyond the scope of the Detective's expertise.

"Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." *Commonwealth v. Pukowsky*, 147 A.3d 1229, 1233 (Pa.Super. 2016). Moreover, as it pertains to expert testimony, our Supreme Court has stated the following:

> We have explained that [e]xpert testimony is permitted only as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman. We have also recognized that the standard for qualifying as an expert is a liberal one and the witness need only have any reasonable pretension to specialized knowledge on the subject matter under investigation and the weight to be given to the expert's testimony is for the factfinder. We have also noted that [e]xpertise, whether acquired as a result of formal education or by experience, is expertise.

***Commonwealth v. Jones***, ___ Pa. ___, 240 A.3d 881, 890 (2020) (quotation marks, quotations, and citations omitted).[3]

Additionally, it is well-settled that the scope of redirect examination is largely within the discretion of the trial court. ***Commonwealth v. Dreibelbis***, 493 Pa. 466, 426 A.2d 1111, 1117 (1981). When a party raises an issue on cross-examination, it is no abuse of discretion for the court to permit redirect on that issue. ***Id.***

On cross-examination, the following relevant exchange occurred between Detective Perry and defense counsel:

> **Q.** Okay. It has been stipulated that [Appellant] voluntarily gave DNA for analysis. Having said that, I don't need to ask another question on that.
>     Now, you also had testified [on direct-examination] that you developed numerous fingerprints attempting to develop latent fingerprints. Am I correct?
>
> **A.** There were five print cards that were lifted out of the back of the car.
>
> **Q.** Where were they lifted from?
>
> **A.** Either the passenger side or rear glass, or the actual what I would call surface of the car itself.
>
> ***
>
> **Q.** Okay. All right.

_____

[3] We note that a single witness may testify and offer opinions in the capacity as both a lay and expert witness. ***See Commonwealth v. Huggins***, 68 A.3d 962, 967 (Pa.Super. 2013). In the case *sub judice*, both parties assert, and the trial court found, that Detective Perry's testimony at issue constitutes expert testimony. We find no error in this regard. ***See Jones***, ***supra***.

Now, during the course of your analysis and developing—let me ask you this.  Are you familiar with the fact that oils from a fingertip can contain cells of DNA as well?

**A.** Yes.

**Q.** Were any of the fingerprints that you developed that had insufficient ridge detail, did you attempt to develop any for purposes of extracting DNA from those samples?

**A.** The surfaces themselves could have been done.  I don't believe where I had identified fingerprints themselves were specifically lifted in this case.  I believe the more focus was on the door handles themselves, because I figured there would be higher likelihood of a sufficient deposit.  There have been times when I swabbed fingerprints themselves, only to come back with a negative result.  It is not a guarantee.

**Q.** Okay. But it is a possibility? Am I correct?

**A.** Absolutely.

N.T., 1/13/20, 192, 194-95.

On redirect examination of Detective Perry, the following relevant exchange occurred:

**[ADA]:** Okay. Now, another thing I want to touch on, too, defense counsel asked whether you swabbed the fingerprints to attempt to get DNA from the fingerprints.  What would be the problem with swabbing fingerprints to obtain DNA, as compared to looking at the fingerprints?

**[DEFENSE COUNSEL]:** I am going to object that this is beyond the scope of his expertise.  If they wish to call a DNA expert to indicate that those items cannot be separated, I will withdraw my objection.

**THE COURT:** Response?

**[ADA]:** Maybe I can reword the question.

Based upon your knowledge, training and experience—let's see how I want to word this.

**[DEFENSE COUNSEL]:** If I think where he is going—and I apologize, Your Honor, I would like to *voir dire* this witness relative

to his background in DNA. I asked one question whether he swabbed for it.

>    **[ADA]:** I think defense counsel has opened up the door on this. He has already asked the witness, did you swab the fingerprints for DNA. So, he has already went down this path. He has opened up the door for me to ask the witness why would you or would you not swab fingerprints for DNA. You can't go part way down the road, defense counsel, and then not let the Commonwealth go the rest of the way.

>    **[DEFENSE COUNSEL]:** There is no expertise beyond the expertise that I allowed him to testify to with swabbing. He is now going to render an opinion as to the possible problems associated with DNA analysis of those swabs. Which, unless he has a background in DNA analysis, meaning, scientifically, it is beyond the scope of his expertise.

>    **THE COURT:** Well, I don't know if it is or it isn't without the question that he did anything, or why he did or didn't do it. Overruled.

>    **[ADA]:** Let's go with that. Why didn't you swab the fingerprints for DNA?

>    **[DETECTIVE PERRY]:** Based on my knowledge and experience to date, when processing those types of cases the presence of the fingerprint powder is going to degrade the sample.

*Id.* at 198-200.

In explaining its rationale for permitting Detective Perry's testimony on redirect examination, the trial court relevantly indicated the following:

>    In the present case, Detective Perry presented his testimony for the Commonwealth. Detective Perry was tasked with processing the vehicle that was collected as evidence in this case. He attempted to find fingerprints and collect DNA evidence from the car.

>    ***

>    Detective Perry serves as the lead evidence technician for the York City Police Department. Detective Perry is a certified crime scene technician "having attended a variety of classes involving crime scenes, evidence processing, [and] evidence analysis." As to his qualification as a crime scene technician,

Detective Perry stated that he has been involved in "approximately 60 homicides, 100s of cases involving shootings, robberies, burglary, or other major crimes." Additionally, Detective Perry confirmed that he had processed motor vehicles multiple times prior to this case.

Trial Court Opinion, filed 7/24/20, at 7, 9 (citations to record omitted).

Based on the aforementioned, we conclude the trial court did not abuse its discretion in admitting Detective Perry's testimony on redirect examination that, based on his knowledge and experience, fingerprint powder would degrade the sample, and accordingly, he did not swab the fingerprints for DNA. *See Jones*, *supra*.

In any event, we conclude defense counsel's cross-examination of Detective Perry regarding his "familiar[ity] with the fact that oils from a fingertip can contain cells of DNA[,]" whether the Detective "attempt[ed] to develop any [fingerprints] for purposes of extracting DNA from those samples[,]" and whether "it is a possibility" that swabbed fingerprints may contain DNA evidence opened the door for the Commonwealth's questioning on redirect examination. N.T., 1/13/20, at 194.

> One who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of that opening.
>
> > The phrase 'opening the door'...by cross examination involves a waiver. If defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area.

***Commonwealth v. Lewis***, 885 A.2d 51, 54-55 (Pa.Super. 2005) (quotation and citations omitted).

Based on the foregoing, we conclude Appellant is not entitled to relief, and therefore, we affirm his judgment of sentence.

Affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/22/2021