883 A.2d 570

## COMMONWEALTH of Pennsylvania, Appellee

v.

## Kevin Brian DOWLING, Appellant.

Supreme Court of Pennsylvania.

Submitted Oct. 21, 2004.

Decided Sept. 29, 2005.

398

John Harold Arnold, Lebanon, for Kevin Dowling, appellant.

Lori Ann Yost, Thomas Kelley, York, Amy Zapp, Harrisburg, Jonelle Harter Eshbach, for the Com. of Pa, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice NIGRO.

Following a jury trial, Appellant Kevin Brian Dowling was found guilty of first-degree murder for the killing of Jennifer Myers. After finding one aggravating circumstance and no mitigating circumstances during the penalty phase, the jury returned a verdict of death. On December 14, 1998, the trial court formally imposed the death sentence. This direct appeal followed, and for the reasons outlined below, we affirm the judgment of sentence.

As Appellant has been sentenced to death, we must independently review the record to determine whether the Commonwealth has established the elements necessary to sustain Appellant's conviction for first-degree murder. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982) (court is required to review sufficiency of evidence in capital cases, even when appellant does not raise such a claim). In reviewing the sufficiency of the evidence, we must review the evidence in the light most favorable to the Commonwealth, as the verdict winner, to determine whether the jury could have

found every element of the crime beyond a reasonable doubt. *Commonwealth v. Rivera,* 565 Pa. 289, 773 A.2d 131, 135 (2001). To convict a defendant of first-degree murder, the Commonwealth must prove beyond a reasonable doubt that the defendant unlawfully killed another human being, that the defendant acted with the specific intent to kill, and that the killing was willful, deliberate, and premeditated. *Commonwealth v. Spotz,* 552 Pa. 499, 716 A.2d 580, 583 (1998); 18 Pa.C.S. § 2502(a). A specific intent to kill may be proven wholly by circumstantial evidence, and may therefore be inferred from the defendant's use of a weapon on a vital part of the victim's body. *Commonwealth v. Bond,* 539 Pa. 299, 652 A.2d 308, 311 (1995).

■ Here, there was clearly sufficient evidence to support Appellant's first-degree murder conviction. The record below establishes that on August 5, 1996, Jennifer Myers was robbed, tied up, and sexually assaulted at the art gallery she owned and operated in York County. Although Ms. Myers did not know the identity of her attacker at the time of the assault, she subsequently recognized Appellant as her attacker when she saw him working at a Sheetz convenience store in Hanover. Detective Arthur Smith went to the store and told Appellant that he wanted to speak with him about the assault of Jennifer Myers. The detective asked Appellant if he was carrying any weapons, to which Appellant responded that he was not but that he had a loaded gun under the driver's seat in his car parked outside in the Sheetz parking lot. Detective Smith then walked to Appellant's car and seized the gun, along with a pair of sunglasses that matched a description of those worn by Ms. Myers' assailant. Appellant was arrested and his car was towed, impounded and inventoried. During the inventory search, police found rope matching that used to restrain Ms. Myers during the assault and a newspaper article that covered the assault. Appellant was charged with the robbery and attempted rape of Ms. Myers.

Two days before trial was set to begin on those charges, on October 20, 1997, Ms. Myers was found murdered in her art gallery. She had been shot three times, once in her chest,

once in her left shoulder and once in her left eye. Witnesses stated that they had heard three bangs in rapid succession from the gallery at approximately 1:00 p.m. and Sandra Eller positively identified Appellant as the person who almost struck her with his car as he was leaving the shopping center in which Ms. Myers' art gallery was located. Police quickly focused their investigation on Appellant and learned that Appellant had tampered with the recorded time on a videotape in an attempt to fabricate an alibi for the time of Ms. Myers' murder and also discovered a letter that Appellant had written to Ms. Myers, asking her for forgiveness. Police arrested Appellant for the murder of Ms. Myers on October 29, 1997.

Appellant went to trial for the robbery and attempted rape charges in April of 1998 and, following that trial, was convicted of robbery, criminal attempt to commit rape and indecent assault. The trial court sentenced Appellant to an aggregate term of imprisonment of 9 to 18 years.[1] Meanwhile, Appellant's murder trial commenced on October 26, 1998. At trial, the Commonwealth argued that Appellant's motive for killing Ms. Myers was to prevent her from testifying at the trial for his attempted rape and robbery charges. In addition to presenting Appellant's letter to Ms. Myers, the videotape of the fabricated alibi and Ms. Eller's testimony placing Appellant near the art gallery at the approximate time of the murder, the Commonwealth presented several other witnesses who testified that they saw a strange man wearing a black wig in the area of the art gallery at the time of the murder. Furthermore, Joseph Leuw, a fellow inmate with Appellant, testified that Appellant told him that he had been in the area of the art gallery on the day of the murder and that he had a wig in his car that belonged to his daughter. The Commonwealth also presented a gunshot residue expert as a witness, who testified that the flannel shirt, pants, hat and sneakers that Appellant was wearing on the day of the murder all

---

1. On appeal, the Superior Court affirmed Appellant's judgment of sentence and this Court denied Appellant's petition for allowance of appeal on November 26, 2001. Appellant then filed a petition for relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546 ("PCRA").

tested positive for gunshot residue. Given this record, we agree with the trial court that there was sufficient evidence to support the jury's conclusion that Appellant intentionally killed Jennifer Myers.[2]

In his first two claims of error, Appellant essentially asserts that counsel in his *robbery and attempted rape trial* was ineffective for failing to adequately litigate a motion that she filed in that case seeking to suppress the physical evidence from Appellant's car. This, however, is simply not a claim that we can consider here as it attempts to challenge the effectiveness of counsel in a matter other than the one that is currently on appeal. Perhaps in recognition of this, Appellant tries to link his counsel's representation at his robbery trial to the outcome of his capital case, asserting that the improperly admitted physical evidence from the car led to a guilty verdict in his robbery and attempted rape trial and that those convictions, in turn, were used by the Commonwealth in Appellant's murder trial as evidence of Appellant's motive for murdering Ms. Myers.[3] However, this tangential relationship aside, the fact remains that Appellant is seeking relief in the instant case on the basis of his counsel's alleged failures in a separate matter, which was based on separate charges, and for which he had a separate trial and a separate trial attorney. Of

2. Appellant filed his notice of appeal to this Court and the trial court issued its 1925(a) opinion. In that opinion, however, the trial court refused to consider Appellant's claims of ineffective assistance of counsel on the basis that a hearing would be necessary to resolve those claims. Appellant petitioned to this Court for an evidentiary hearing and as this occurred prior to our decision in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002) (appellants should generally wait to bring ineffectiveness claims until collateral appeal), we remanded the matter to the trial court to hold such a hearing on Appellant's ineffectiveness claims. At that hearing, the trial court decided "to consider issues of ineffectiveness in both [the murder and the robbery] cases since one (1) of the aggravating circumstance in the murder trial was the fact that [Appellant] had previously been convicted of the attempted rape and robbery of Mrs. Myers." Tr. Ct. Op. at 6. However, the only appeal before this Court now is Appellant's appeal from his sentence of death.

3. Interestingly, Appellant opposed a Commonwealth motion to consolidate the two matters, which does not seem entirely compatible with his position here that he is entitled to relief in one case on the basis of what occurred in the other.

course, the proper venue for Appellant to raise a claim relating to his counsel's performance at his robbery trial is in an appeal that stems from *that* trial, and not in an appeal that stems from a wholly distinct trial.[4]    Thus, Appellant is not entitled to relief on the basis of his first two claims.

■    Appellant's next two issues implicate the competency of his thirteen year-old daughter, who testified against Appellant.    Appellant first asserts that the trial court erred by denying him access to the mental health records of his daughter on the basis that Appellant was on a "fishing expedition designed to attempt to discredit [his daughter] in any way possible."  Tr. Ct. Op. at 24.   Appellant argues that, as the witness's father, he knew first-hand that his daughter had been diagnosed with depression, a panic disorder and agoraphobia and as such, his attempt to obtain and use his daughter's medical records to challenge her competency was not in any way a "fishing expedition."   As both the lower court and the Commonwealth point out, however, communications between a psychiatrist or licensed psychologist and their patients are confidential under 42 Pa.C.S. § 5944 and this Court has clearly held that the statutory privilege pursuant to Section

---

**4.**   Appellant appears to argue, however, that this Court should consider his underlying ineffectiveness claims related to his robbery trial in this appeal because the trial court linked the two cases together by hearing argument on Appellant's ineffectiveness claims from both the robbery case and the instant case at the remand hearing.   While the trial court did indeed consider Appellant's ineffectiveness claims from both cases at the remand hearing, nothing in the record indicates that the two cases were ever officially consolidated for purposes of that hearing, appeal or otherwise.   In fact, as noted above, when the Commonwealth originally filed a motion to consolidate the two matters, Appellant actually *opposed* that motion and the trial court denied it.

Even though the two cases were never formally consolidated, Appellant's attempt to raise claims regarding his counsel's ineffectiveness at the robbery trial in the instant appeal prompted us to review the record from the robbery case to ascertain the status of that matter.   Upon doing so, we discovered that the record did not contain any clear disposition of Appellant's PCRA petition, much less an order definitively disposing of that petition.   Under these circumstances, we feel compelled to direct the trial court to enter a final order disposing of Appellant's PCRA petition in the robbery case so that Appellant has the opportunity to appeal that disposition to the Superior Court.   We will therefore enter an order to that effect.

5944 is not outweighed by a defendant's right to cross-examine witnesses or his due process rights. *See Commonwealth v. Counterman*, 553 Pa. 370, 719 A.2d 284, 295 (1998) (trial court did not err in denying appellant's request for wife's mental health records in light of clear mandate of Section 5944 and in light of fact that there was no evidence that wife had received mental health treatment).[5]

Although Appellant argues that "it is possible" that his daughter was not treated by an actual psychiatrist, *see* Appellant's Bf. at 32, thereby making the privilege inapplicable to her mental health records, such a speculative argument loses any appeal when considering that it follows on the heels of Appellant's self-proclaimed "first-hand" knowledge of his daughter's mental health situation and when considering that Appellant himself testified at his sentencing hearing that a *"psychiatrist* determined where [his daughter's] panic disorder originated." N.T., 11/9/98, at 16 (emphasis added). Moreover, it is worth noting that Appellant could have asked either his daughter or his wife, who also testified against Appellant, questions concerning his daughter's mental health in an effort to challenge her competency, but opted not to. Thus, we see no abuse of discretion in the trial court's decision denying Appellant access to his daughter's records.

■ Appellant also contends, however, that the trial court failed to conduct a sufficient competency colloquy of his daughter. This claim also fails.

■ "A child's competency to testify is a threshold legal issue that the trial court must decide, and an appellate court

---

5.  Appellant appears to argue that he was entitled to inspect his daughter's records pursuant to his constitutional right as a parent to her "custody and management." Of course, as the Commonwealth points out, this claim is completely specious as Appellant did not seek her records for this purpose but rather, sought them to challenge her competence to testify. While Appellant argued in his pre-trial motion seeking his daughter's mental health records that he wanted to view those records so that he could make a parental decision as to whether it was in his daughter's best interest to testify, he does not reiterate this argument here, which is just as well considering that it would be hard for Appellant to make an objective assessment as to whether it was in his daughter's best interest to testify *against* him.

will not disturb its determination absent an abuse of discretion." *Commonwealth v. Washington,* 554 Pa. 559, 722 A.2d 643, 646 (1998). When assessing whether a witness under fourteen years of age is competent to testify, the trial court must consider whether the witness has "(1) such capacity to communicate, including as it does an ability to understand questions and to frame and express intelligent answers, (2) [the] mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about, and (3) a consciousness of the duty to speak the truth." *Rosche v. McCoy,* 397 Pa. 615, 156 A.2d 307, 310 (1959) (emphasis omitted).

Here, the trial court found that Appellant's daughter "possessed all three requirements" and that the "record indicates that these requirements were met." Tr. Ct. Op. at 34. Appellant concedes that his daughter was colloquied about her duty to tell the truth but argues that no questions were asked regarding his daughter's ability to perceive or recollect past events. Specifically, Appellant suggests that the trial court should have questioned his daughter about whether she suffered from any mental disorders that affected her ability to perceive or recollect events.[6]

In countering this claim, the Commonwealth argues that although Appellant apparently would have the Court infer that his daughter's alleged mental illness necessarily affected her competence to testify, this Court has clearly held otherwise. *See Counterman,* 719 A.2d at 295 ("incompetency does not follow from the fact that the witness is insane or mentally ill"). In any event, the Commonwealth argues, and we agree, that there was nothing during the testimony of

---

6. Notably, Appellant did not object to the sufficiency of the colloquy at the time it was given nor does the record reflect that he objected to his daughter's competency either after the competency hearing was held, *see* N.T., 10/26/1998, at 7, or at any time during her testimony. *See id.* at 7–19; 69–93. While Appellant did, as indicated above, file a pre-trial request for his daughter's mental health records on the basis that they may reflect on her ability to testify, and thus questioned her competency at that stage, he did not ever object to her competency during the trial itself.

Appellant's daughter which indicates in any way that her ability to perceive or recollect the events about which she testified was affected by a mental illness.[7] While Appellant is correct that the Commonwealth did not specifically ask questions during its competency colloquy about Appellant's daughter's ability to perceive or recollect past events or about her mental health history, a trial court can base its competency determination on criteria other than specifically-targeted questions, criteria such as the witness's demeanor, alertness, thoughtfulness, sincerity and general responses and testimony. *See Commonwealth v. Hart*, 501 Pa. 174, 460 A.2d 745, 747 (1983) (trial court based competency determination on witnesses' demeanor during voir dire and during testimony); *Commonwealth v. Short*, 278 Pa.Super. 581, 420 A.2d 694, 697 (1980) (trial court's opportunity to observe demeanor, alertness, thoughtfulness and sincerity of child witness may be more informative than answers child gives to certain questions). Indeed, there was nothing that Appellant's daughter said or did during her competency colloquy or during her testimony that prompted defense counsel to lodge an objection to her competency. In the end, we must also be mindful that Appellant's daughter was thirteen years-old at the time she testified and "the inquiry into the child's competence must be more searching in proportion to the proposed witness's chronological immaturity." *Commonwealth v. Anderson*, 381 Pa.Super. 1, 552 A.2d 1064, 1068 (1988) (citing *Rosche*, 156 A.2d at 307).

Given all of these circumstances, we agree with the Commonwealth that Appellant has simply failed to demonstrate

7. Although Appellant points to one instance where his daughter was unable to recall the exact date that an event occurred, *see* Appellant's Bf. at 31 n. 5, and there were other instances not cited to by Appellant where his daughter was unable to recall exact dates of an occurrence, such circumstances do not in any way demonstrate that the trial court abused its discretion in finding Appellant's daughter competent to testify. Indeed, while Appellant's daughter could not always remember the exact dates of when certain things happened, she did remember the general timeframe in which events occurred and answered questions in a way that supports the trial court's conclusion that she had the ability to communicate and to perceive and recall the events about which she testified.

that the trial court abused its discretion in finding Appellant's daughter competent to testify. *See Hart,* 460 A.2d at 747 (person asserting incompetency has burden of overcoming presumption that witness is competent to testify and demonstrating incompetency). Accordingly, Appellant is not entitled to relief on the basis of either of his claims related to his daughter's competency.

Next, Appellant asserts that he was unduly prejudiced by the Commonwealth's use of his prior convictions for the robbery and attempted rape of Ms. Myers as evidence of Appellant's motive in her murder.[8] According to Appellant, "it does no good for the juror to hear of the possible motive that Appellant wished to prevent a witness from testifying against him after he had attempted to rape and rob her" because the prejudice resulting from the admission of such evidence "far outweighs the probative value." Appellant's Bf. at 35. This claim fails.

"Evidence of prior bad acts committed by a defendant is not admissible solely to show the defendant's bad character or his propensity for committing bad acts." *Commonwealth v. Reid,* 571 Pa. 1, 811 A.2d 530, 550 (2002). However, evidence of prior bad acts is admissible where there is a legitimate reason for the evidence, such as to establish motive. *Id.* "In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts 'must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.'" *Id.* (quoting *Commonwealth v. Schwartz,* 445 Pa. 515, 285 A.2d 154, 158 (1971)). In weighing whether evidence of prior bad acts will be admissi-

---

8. Appellant also argues that it was error for the trial court in his robbery and attempted rape case to allow evidence in that Ms. Myers had died, even though the trial court did not allow any evidence that she had been murdered. According to Appellant, such evidence led the jury in his robbery case to speculate about how it is that Ms. Myers died. However, just as we cannot consider Appellant's ineffectiveness claims regarding his robbery and attempted rape counsel in this capital appeal, we cannot consider his claim of trial court error in connection with that trial as it alleges error in a separate case not on appeal here.

ble, however, the trial court must still weigh the relevance and probative value of the evidence against the prejudicial impact of that evidence. *Id.*

Here, Appellant does not seem to challenge the trial court's finding that Appellant's prior convictions for robbing and attempting to rape Ms. Myers were admissible to establish his motive for killing Ms. Myers but rather baldly alleges that the prejudicial impact of those prior convictions outweighed the probative value that they had. Appellant, however, does not further develop or explain his claim, which is especially problematic in light of the fact that this Court has previously held prior bad acts evidence admissible in substantially similar circumstances. *See Commonwealth v. Flori,* 300 Pa. 125, 150 A. 290, 293 (1930) (fact that defendant had been indicted for robbing victim, who defendant killed the day before he was to be tried for the robbery, was admissible at defendant's murder trial for purpose of demonstrating defendant's motive for killing the victim). Given this case law, and given Appellant's utter failure to demonstrate how the prejudicial impact of the evidence of his prior convictions outweighed its clear probative value, we decline to find any abuse of discretion in the trial court's decision to allow the Commonwealth to introduce Appellant's prior convictions for the limited purpose of showing Appellant's motive for killing Ms. Myers. *See Commonwealth v. Tedford,* 523 Pa. 305, 567 A.2d 610, 621 (ruling regarding admissibility of evidence will only be reversed upon a *showing* that trial court abused discretion) (emphasis added); *Commonwealth v. Brewer,* 876 A.2d 1029, 1035 (Pa.Super.2005) (appellant has burden of showing that trial court abused discretion in admitting certain evidence).

■ In his last two claims, Appellant contends that the waiver of his right to present mitigating circumstances at his penalty phase was not valid and that the "finality of the death sentence will prevent [him] from any possibility of ever benefiting from the rapid progress in technology" used to exonerate death row inmates. Appellant's Bf. at 42. Appellant, however, did not raise either of these claims in either his original 1925(b) statement nor his supplemental 1925(b) state-

ment. The claims are therefore waived. *See Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 309 (1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").[9]

Having determined that Appellant is not entitled to any relief on the claims that he has raised, we must, in compliance with our statutory duty pursuant to 42 Pa.C.S. § 9711(h)(3), affirm the sentence of death unless we determine that the sentence was the product of passion, prejudice or any other arbitrary factor or that the evidence fails to support the finding of at least one aggravating circumstance. Upon review of the record, we conclude that the sentence of death was not the product of passion, prejudice or any other arbitrary fact but rather, was based upon sufficient evidence that Appellant intentionally killed Ms. Myers. We also conclude that the evidence was sufficient to support the finding of at least one aggravating circumstance, that the victim, Ms. Myers, was the prosecution witness to a felony committed by Appellant and killed for the purpose of preventing her testimony against Appellant in a criminal proceeding involving that felony. *See* 42 Pa.C.S. § 9711(d)(5).

Judgment of sentence affirmed.[10]

## ORDER

PER CURIAM.

**AND NOW,** this 29th day of September, 2005, the Court of Common Pleas of York County is hereby directed to enter an

9. This Court previously considered waived claims in capital cases pursuant to the relaxed waiver doctrine. However, before Appellant filed his brief with this Court, we announced the general rule that the relaxed waiver doctrine would no longer apply to direct appeals of capital cases. *See Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385, 403 (2003) (holding that new rule that relaxed waiver doctrine generally will not apply to capital direct appeals will be applied only prospectively, "beginning with those capital direct appeals in which the appellant's brief has not yet been filed in this Court, and is not due for thirty days or more after today's decision," *i.e.*, May 30, 2003).

10. The Prothonotary of this Court is directed to transmit to the Governor's office a full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court pursuant to 42 Pa.C.S. § 9711(i).

order disposing of Appellant's petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546, in the matter docketed at 952 CA 1997. *See Commonwealth v. Dowling*, 255 CAP, Op. at 404 n. 4, 883 A.2d at 575 n. 4.