J-A16022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| KASIM GIBSON | |
| Appellee | No. 2788 EDA 2014 |

Appeal from the Order Entered August 26, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006605-2013

BEFORE:  LAZARUS, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                   **FILED OCTOBER 30, 2015**

Appellant, the Commonwealth of Pennsylvania (the Commonwealth), appeals by permission from the interlocutory order, entered on August 26, 2014, denying its motion *in limine* seeking to admit other acts evidence pursuant to Pa.R.E. 404(b).  Upon review, we affirm.

The facts of this case, as alleged in the Commonwealth's motion *in limine*, are as follows:

> On April 30, 2013, at approximately 12:45 p.m. in the area of 800 N. 17th Street the defendant[, Kasim Gibson (Gibson),] engaged in a brief conversation with 45[-]year[-]old Lanice Manuel, he then reached into the front of his sweatpants, retrieved a small object, [and] handed it to Ms. Manuel.  In return, Ms. Manuel handed [Gibson] United States [c]urrency.  Officers stopped Ms. Manuel in the area of 1800 Wyle Street and recovered one red tinted packet of crack cocaine.  Officers then returned to the area of 800 N. 17th Street and observed [Gibson] sitting

---

*Retired Senior Judge assigned to the Superior Court.

on the steps of 1635 Francis Street. Recovered from [Gibson] was $325[.00].

Trial Court Opinion, 1/5/2015, at 2.

The Commonwealth charged Gibson with delivery of a controlled substance and simple possession of a controlled substance.[1]  On July 29, 2014, the Commonwealth filed a motion *in limine* to admit other acts evidence pursuant to Pa.R.E. 404(b).  The Commonwealth sought to introduce three professionally produced on-line rap music videos featuring Gibson.  More specifically, in the motion *in limine*, the Commonwealth alleged the following:

> On January 2, 2014, [Gibson] published a video entitled "F**ked Up" on YouTube.  [Two-minutes and thirteen seconds into the video, Gibson] says, "started selling crack at 17th and Ridge[,] no coat just a hoodie on and it was cold as s[h]it so f**ked up I being serving my man mom so f**ked up I'm losing my damn mind."
>
> On February 19, 2014, [Gibson] published a video entitled "Do Ya Hear Me."  At 56 seconds [into the video,] [Gibson] says, "my favorite color green, but for me to get that green I had to sell white." [Gibson] is standing at the Francisville Recreation Center.  At [one-minute and 20 seconds, Gibson] says, "cash rules everything around me cream get the money I'm trying to lean on the money plotting on the paper watch me scheme for that money starting with a block on every 16th be hard I'm always have feens whether its music or selling coke all I want to know is do you niggas hear me."  At [two minutes and thirty-seven seconds into the video, Gibson] says, "are we talking fact or are we talking bout fiction when I say I'm in the mix [I'm] talking

---

[1]  35 P.S. §§ 780-113(a)(30) and 780-113(a)(16), respectively.

about the tracks when I say I'm dishing dimes I'm talking about slinging crack."

On April 9, 2014, [Gibson] published "Made it Off Caine" On YouTube. At [one minute and 34 seconds into the video, Gibson] says, "whip that shit till my hand ache, whip that shit like I'm trying to make pancakes, scrape everything off the damn plate, I got rocks the size of your damn face, I talk this shit cause every day I live it, pray to [G]od cause every day I'm sinning, I ain't lying I got stacks in my pockets, tell em like this when they ask how I got it made all this shit off caine."

*Id.* at 2-3 (footnotes omitted).

Moreover, as the trial court noted, "[t]he videos are professionally produced, with high quality camera work, and high quality video and audio editing, depicting multiple venues, singers and supporting cast members." *Id.* at 3. The locations depicted in the videos are within several blocks from where police stopped Gibson and Ms. Manuel. *Id.* at 2, n.1-2. Gibson did not produce the videos and he did not post them on YouTube. *Id.* at 3.

On August 20, 2014, Gibson filed a response in opposition to the Commonwealth's motion *in limine*. On August 21, 2014, the American Civil Liberties Union of Pennsylvania (ACLU-PA) also filed a brief in opposition to the Commonwealth's motion *in limine*. On August 26, 2014, the trial court held a hearing on the motion and denied relief. On September 5, 2014, the Commonwealth filed a motion for reconsideration. On September 9, 2014,

the trial court held a hearing and again denied relief. This timely appeal resulted.[2]

On appeal, the Commonwealth presents the following issue for our consideration:

> Where [Gibson] is charged with selling cocaine and the defense theory is that the money he possessed following an apparent drug sale came from a legitimate source, did the lower court err in excluding from evidence videos made by [Gibson] in which he proclaims [to] have "stacks of money in his pocket" from "selling coke"?

Commonwealth's Brief at 1 (original brackets omitted).

The Commonwealth contends that the trial court abused its discretion and substantially handicapped the prosecution "from introducing [Gibson's] own videos bragging of his cocaine selling." *Id.* at 6. The Commonwealth's argument is comprised of three sub-parts. First, the Commonwealth argues that the videos are relevant under Pa.R.E. 404(b) to show motive and intent. Next, the Commonwealth avers the videos are relevant and constitute admissions by Gibson that show a common scheme or *modus operandi*. Finally, the Commonwealth argues that the videos are necessary for an

_____

[2] On September 26, 2014, the Commonwealth filed a notice of appeal, and a corresponding concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b), seeking review of an interlocutory order by permission pursuant to Pa.R.A.P. 1311. The trial court continued the trial date pending resolution of this appeal and filed an opinion pursuant to Pa.R.A.P. 1925(a) on January 5, 2015. In addition, ACLU-PA filed an appellate *amicus* brief on behalf of Appellant for our consideration.

anticipated defense that the money police found on Appellant upon arrest came from a legitimate source. We will examine these contentions in turn.

First, however, we set forth our standard of review. We review the denial of a motion *in limine* for an abuse of discretion. **Commonwealth v. Johnson**, 107 A.3d 52, 68 (Pa. 2014) (citation omitted). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.*

In the first portion of its argument, the Commonwealth contends that the videos are relevant under Pa.R.E. 404(b) to show "evidence of other crimes, wrongs, or acts" to prove such things as "motive, opportunity, intent, preparation, plan, knowledge, and identity" and that the probative value of the videos outweighs the potential for prejudice. Commonwealth's Brief at 8, *citing* Pa.R.E. 404(b)(2) and (3) (brackets omitted). The Commonwealth argues that Gibson's "own proclamations in the videos of 'having stacks [of money] in [his] pocket' from 'selling coke' and 'caine' in that neighborhood" are relevant to prove his intent. *Id.*

This Court has stated:

> Relevance is the threshold for admissibility of evidence. Pennsylvania Rule of Evidence 401 provides as follows:
>
> **Rule 401. Test for Relevant Evidence**
>
> Evidence is relevant if:

(a)    it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b)    the fact is of consequence in determining the action.

Pa.R.E. 401. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

'All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible.' Pa.R.E. 402. 'The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.' Pa.R.E. 403.

Pennsylvania Rule of Evidence 404(b) provides as follows:

**Rule 404. Character Evidence; Crimes or Other Acts**

\*    \*    \*

**(b) Crimes, Wrongs or Other Acts.**

(1)    *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2)    *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2). Evidence of [other acts] is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes. Nevertheless, evidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character. Specifically, [other acts] evidence is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident. When offered for a legitimate purpose, evidence of [other acts] is admissible if its probative value outweighs its potential for unfair prejudice.

*Commonwealth v. Tyson*, 2015 PA Super 138, at *3 (all case citations and some quotations omitted).

As the Commonwealth alleges, "evidence of [other] acts is admissible where there is a legitimate reason for the evidence, such as to establish motive [or intent]." *Commonwealth v. Dowling*, 883 A.2d 570, 578 (Pa. 2005) (citation omitted). "In order for evidence of [other] acts to be admissible as evidence of motive, the [other] acts must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Id.*

Moreover, this Court has previously determined:

With a modicum of effort, in most cases it is possible to note some similarities between the accused's [other acts] and that alleged in a current case. To preserve the purpose of Rule 404(b)(1), more must be required to establish an exception to the rule—namely a close factual nexus sufficient to demonstrate the connective relevance of the [other] acts to the crime in question. […T]his Court has warned that [other] acts may not be admitted for the purpose of inviting the jury to conclude that the defendant is a person 'of unsavory character' and thus inclined to have committed the crimes with which he/she is charged.

*Commonwealth v. Ross*, 57 A.3d 85, 104-105 (Pa. Super. 2012) (*en banc*).

Further, while the videos at issue were posted to YouTube after the charged crimes,[3] we have previously determined "Rule 404(b) does not distinguish between prior and subsequent acts." *Commonwealth v. Kinard*, 95 A.3d 279, 285 n.3 (Pa. Super. 2014). "Evidence of *subsequent* [acts] is less strongly probative of intent than prior offenses since it does not establish that a defendant possessed the requisite intent prior to the commission of the crime being tried." *Commonwealth v. Martinez*, 447 A.2d 272, 274 (Pa. Super. 1982). "Evidence of a later [act] is so tenuously related to intent at the time of an earlier [act] that it is admissible only if proof of both [] is necessary to prove the Commonwealth's case." *Id.*

There are two prior Pennsylvania decisions dealing specifically with rap video evidence – *Commonwealth v. Ragan*, 645 A.2d 811 (Pa. 1994) and *Commonwealth v. Flamer*, 53 A.3d 82 (Pa. Super. 2012). The Commonwealth barely touches upon them. *See* Commonwealth's Brief at 13. We find it necessary to summarize those cases.

In *Ragan*, Ragan was convicted of first-degree murder, recklessly endangering another person, and possessing an instrument of crime after an altercation on a basketball court led to a fatal shooting. On appeal to our

---

[3]   There is no evidence as to when the videos were filmed or produced.

Supreme Court, Ragan argued "that the trial court improperly admitted a rap song recorded by [his] rap group the 'Plush Brothers.'" ***Ragan***, 645 A.2d at 820. Ragan claimed that the rap was irrelevant because the lyrics generally spoke to gun violence and shooting people, but did not specifically reference the murder at issue. ***Id.*** Our Supreme Court noted, however, "the song in question was introduced in response to testimony on direct examination in which [Ragan] had portrayed himself as a college student and an artist." ***Id.*** The Supreme Court determined "[t]he fruits of [Ragan's] artistic leanings were clearly relevant to rebut this testimony." ***Id.*** Moreover, in determining that the rap lyrics' probative value outweighed the prejudice to Ragan, our Supreme Court relied upon its prior decision in ***Commonwealth v. Abu-Jamal***, 555 A.2d 846 (Pa. 1989) wherein it held "that the admission of a literary work in which the defendant stated that 'power grows out of the barrel of a gun' was relevant to rebut the character testimony that the defendant was a 'peaceful and genial' man[.]" ***Id.*** The ***Ragan*** Court concluded the trial court did not abuse its discretion in admitting the rap lyrics at issue.

Here, ***Ragan*** does not presently support reversal. The Commonwealth is not, at this time, seeking to rebut character evidence in an effort to impeach Gibson. Moreover, there has been no proffer of such evidence and no effort by Gibson, as of yet, to offer a legitimate source defense for the

found currency. Thus, a pretrial order directing the admission of the rap videos is premature at this point. However, we note that if Appellant places his character at issue, or alleges at trial the currency recovered from him derived from a legitimate source, then, as we discuss more fully later in relation to the third subpart of the Commonwealth's contention, the Commonwealth can renew its request to admit the rap videos.

Other cases relied upon by the Commonwealth do not support its contention that it is immediately entitled to relief on grounds that Gibson's rap videos constitute admissions. In **Flamer**, the Commonwealth sought to introduce evidence that, while imprisoned on murder charges, Flamer conspired to murder a witness. More specifically, "the Commonwealth filed a motion *in limine*, where it sought to introduce fifteen pieces of evidence to establish that Nafeast [Flamer] and Marvin [Flamer] conspired" with another man to murder the witness. **Flamer**, 53 A.3d at 84. Listed among those pieces of evidence were "Nafeat's personal raps and writings recovered from his prison cell." **Id.** at 86. The trial court denied the Commonwealth's request to admit the recovered raps and writings. A panel of this Court ultimately determined:

> [T]he trial court abused its discretion in finding the writings and raps of Nafeast to be irrelevant and prejudicial. In these raps, Nafeast talks about people 'keeping their mouths shut', sending his friends to kill for him, and 'popping shells' in people that 'run their mouth.' These statements in the raps have a tendency to show contemplation for a conspiratorial arrangement; therefore, these statements are relevant. Although these statements are also prejudicial, the

- 10 -

fact that these statements are harmful to the defendant's case does not make these statements unduly prejudicial. Statements that are on balance prejudicial are statements that inflame the jury to decide the case on that evidence alone and not legal propositions. These statements do not rise to that level of prejudice. Therefore, the trial court abused its discretion in finding the relevant statements in these raps inadmissible.

*Id.* at 89-90.

In the case *sub judice*, the trial court determined:

*Flamer* provides no precedent for admission of the videos in this case. To the contrary, the reason for admitting the rap lyrics written by Flamer and found in his prison cell, was that they showed a contemplation for the conspiracy to kill a Commonwealth witness. Thus, the rap lyrics were admissible because they related to and were in the course of the conspiracy. Here, by contrast, the music videos do not evidence a similar tie-in. As the *Flamer* court noted, it was not an abuse of discretion to exclude a rap by [Appellant], where 'the rap was too vague to be construed as being about the case.'

Trial Court Opinion, 1/5/2015, at 6 (footnotes omitted).

We agree. Unlike *Flamer*, where the Commonwealth charged the defendant with conspiring to kill a witness and a conviction turned on proof that Flamer entered into an agreement with the intent to commit murder, the Commonwealth here charged Gibson with actual delivery of crack cocaine. Under such circumstances, Gibson's intent and/or *mens rea* is substantially less relevant and we concur with the trial court's assessment, at this time. The videos would be of little assistance to the jury and would only create an impermissible inference that Gibson was a bad person. Here, there were purported eyewitnesses to the charged offenses and police

recovered physical evidence – cash from Gibson and narcotics from Ms. Manuel. Thus, the instant rap videos are unnecessary to prove the Commonwealth's case. Moreover, we recognize that **Flamer** dealt with rap lyrics that prison officials confiscated directly from his cell. Accordingly, there was strong indicia that Flamer was the individual who wrote those lyrics. Hence, that scenario is different from the situation presented here, where there were multiple people involved in the production and authorship of the rap videos.[4]

Next, the Commonwealth contends that the rap videos constitute admissions by Gibson and, therefore, the trial court erred in precluding them. Relatedly, the Commonwealth avers that the videos are significant to show a common scheme or *modus operandi* for drug trafficking as described by Gibson's own admissions. Commonwealth's Brief at 10-11. The Commonwealth argues "[o]ther bad acts evidence is particularly admissible where it constitutes an admission of guilt." *Id.* at 8. More specifically, the Commonwealth contends "the statements made in the videos are unquestionably admissions" because Gibson "boasts specifically about making money selling crack cocaine while directly referencing or being visually depicted in a location that is within a three-block radius of the scene of the instant crime." *Id.* at 14.

---

[4] It must be noted that there is nothing in the certified record, including the rap videos themselves, which identifies who wrote the rap song lyrics.

In arguing "other bad acts evidence is particularly admissible where it constitutes an admission of guilt[,]" the Commonwealth relies upon our Supreme Court's decisions in *Commonwealth v. Dreibelis*, 426 A.2d 1111 (Pa. 1981), *Commonwealth v. Brohnstein*, 691 A.2d 907 (Pa. 1997), and *Commonwealth v. Vandivner*, 962 A.2d 1170 (Pa. 2009). *Id.* at 8. Those cases, however, are distinguishable from the instant case, because they involved statements made by the defendants concerning detailed particulars related to the crimes for which they were being prosecuted.

In *Dreibelis*, two witnesses testified regarding statements they heard Dreibelis make concerning a conspiracy and killing. One of the witnesses testified that she overheard Dreibelis speaking with his co-conspirators about leaving evidence at the scene and questioning why they left witnesses alive at the scene. *Dreibelis*, 426 A.2d at 1113. This witness also testified that Dreibelis and his co-conspirators "changed out of their clothes and burned the clothing they had been wearing" and "cut and dyed their hair and shaved their beards." *Id.* The other witness testified that Dreibelis admitted to her that he went with his co-conspirators to the murder victim's home to collect a debt and shot him when he reached for a knife. *Id.* at 1114. She also testified that Dreibelis told her "they buried their guns and they d[y]ed their hair and they shaved." *Id.* Our Supreme Court found "no error in the admission of the testimony at issue." *Id.* at 1115. The Court determined that the evidence was relevant, but left to the factfinder to

determine its weight. *Id.* Although ***Dreibelis*** involved evidentiary admissions, it did not involve "other bad acts."

In ***Bronshtein***, the Supreme Court determined that a defendant's admission of one murder was permitted in the criminal prosecution for another murder. Bronshtein was on trial for the robbery and homicide of Alexander Gutman, the owner of a jewelry store in the King of Prussia Shopping Center. Bronshtein initially confessed to police that he robbed and killed another jeweler named Jerome Slobotkin over a month after the Gutman murder at issue, in the same geographical area. Later, Brohenstein recanted and claimed someone else had committed the two murders. ***Brohnstein***, 691 A.2d at 916-917. The Supreme Court determined that the admission to police regarding Slobotkin was admissible to establish a common scheme or plan in the Gutman murder trial. *Id.* at 915-916. The ***Brohnstein*** Court concluded:

> Slobotkin and Gutman, both identified as Russian–Jews, were murdered with firearms in the course of robberies at their respective jewelry stores. Both victims were shot in the head at close range. [Bronshtein] initially denied his involvement in both crimes but told police that he knew who had committed the crimes. Although [Bronshtein] initially confessed to the Slobotkin murder, he later recanted that confession and told police that the two murders had been committed by the same person, a mysterious 'Mr. X.' Finally, the Slobotkin murder was committed only five weeks after the Gutman murder. Given the similarities between these two crimes occurring only weeks apart, evidence indicating the identity of the perpetrator of the Slobotkin murder was admissible for the purpose of establishing the identity of the perpetrator of the Gutman murder through a common scheme, plan or design.

*Id.* at 916.

Finally, in ***Vandivner***, police apprehended Vandivner after an altercation wherein he shot two people. At the police barracks, Vandivner stated, "This is a death penalty case and I don't want the needle, life for a life. Tell the DA I will plead guilty to life. I would have killed myself if I knew Michelle was dead." ***Vandivner***, 962 A.2d at 1174. The Supreme Court declared:

> [T]he content of the statement obviously was relevant: it was an admission of guilt. In addition, the statement had substantial probative value in that [Vandivner] in effect admitted that he knew precisely what he had done including the potential consequences of his conduct. That awareness, in turn, was relevant to rebut his trial claims of voluntary intoxication and diminished capacity.

*Id.* at 1181. ***Vandivner*** involved a direct admission to police for a crime that was the subject of the defendant's trial.

As the foregoing cases establish, our Supreme Court has allowed, as non-hearsay, a defendant's admissions regarding crimes that are the subject of a trial. It has also allowed, under Rule 404(b), evidence of other acts where that testimony established a common scheme or plan. In this case, neither of those two criteria have been met. First, the rap videos are not admissions. There are no specific references to the crime at hand. In fact, there is no evidence that Gibson even wrote the lyrics as opposed to merely reciting them. At best, the videos are artistic expressions that the Commonwealth seeks to admit to show Gibson's propensity to commit

crimes. The cited cases all involved specific admissions relative to the case at hand, which were made directly to a third party. In this case, as noted by the trial court, the videos "were produced and directed by persons and entities other than [Appellant]." Trial Court Opinion, 1/5/2015, at 3 While the lyrics generally reference the neighborhood where the crime was allegedly committed, Appellant does not specifically reference the crime in controversy, let alone admit that he committed it. Thus, the rap videos do not constitute an admission to the crimes charged and we discern no abuse of discretion by the trial court for denying the Commonwealth's request to admit the videos as an admission to a crime.

Regarding common plans and schemes under Rule 404(b), a panel of this Court recently determined:

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of **each criminal incident** to assure that the evidence reveals criminal conduct which is **distinctive** and so nearly identical as to become the **signature** of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator.

**Commonwealth v. Tyson**, 2015 PA Super 138, at *3 (emphasis added).

Initially we note that in reviewing the decided cases in this area of law, we uncovered a case dealing with a literary work describing prior purported crimes. In **Commonwealth v. Einhorn**, 911 A.2d 960 (Pa. Super. 2006), Einhorn was on trial for the murder of his girlfriend, Holly Maddux. A prior

panel of this Court determined that it was proper for the Commonwealth to present "evidence of Einhorn's physical assaults of his prior girlfriends, Rita Resnick and Judith Sabot, as documented in his diary" in order to show a common plan or scheme. *Einhorn*, 911 A.2d at 968. Upon review, the diary entries specifically referenced the other two women by name and described, in particular detail, hurting and choking them. Einhorn also wrote in his diary, "[v]iolence always marks the end of a relationship" and "[a]ll three attacks were motivated by a woman ending a relationship with Einhorn." *Id.* The trial court examined the similarity of the other acts and the timeliness of the acts in relation to each other and determined the diary entries were admissible as evidence of a common plan or scheme. *Id.* The trial court issued a cautionary jury instruction that the evidence was to be used for the limited purpose. *Id.* On appeal, we discerned no abuse of discretion or error of law. *Id.* In sum, in *Einhorn*, the proffered writings specifically identified victims and detailed prior crimes.

Indeed, the cases cited by the Commonwealth all deal with actual criminal acts. *See* Commonwealth Brief at 11-12, *citing* ***Commonwealth v. Hicks***, 91 A.3d 47 (Pa. 2014) (in prosecution for murder of a prostitute high on crack cocaine, the Commonwealth was permitted to introduce common plan witness testimony wherein Hicks admitted he "had a problem hurting prostitutes" after supplying them with narcotics); ***Commonwealth v. Boyle***, 733 A.2d 633 (Pa. Super. 1999) (testimony regarding four completed

drug sales using a confidential informant to set up identical deliveries shows a common plan); ***Commonwealth v. Echevarria***, 575 A.2d 620 (Pa. Super. 1990) (confidential informant "was able to purchase cocaine from [Echevarria] on two occasions in the days leading up to [his] arrest for a third sale, [thus,] was directly relevant to the charge of possession with intent to deliver cocaine.").

Unlike the situation here, in those cases, the prior bad act evidence was testimony from other individuals related to actual prior criminal acts. Furthermore, in order to admit common plan prior acts evidence, there must be a distinct or signature plan to reveal that the perpetrator is engaging in nearly identical criminal conduct. Here, the alleged other acts evidence is comprised of lyrical performances referring generally to garden-variety drug transactions in a Philadelphia neighborhood. As such, the video references possess a derivative, fictional quality and lack the distinctive, signature characteristics required for their admission under the common scheme and plan exception to Rule 404(b). Thus, we discern no error in precluding the rap videos from trial based upon a common plan or scheme under Rule 404(b).

In the third sub-part of the appellate issue presented, the Commonwealth argues that the videos, particularly those excerpts wherein Appellant brags about having stacks of cash, are necessary for an anticipated defense that the money found on Appellant, in the search

incident to arrest, came from a legitimate source. Commonwealth's Brief at 16-18.

Preliminarily, the trial court recognized "[t]he anticipated defense has not been articulated or adopted by the defense, but the expectation has been described by the Commonwealth." Trial Court Opinion, 1/5/2015, at 8. The trial court ultimately determined

> the probative value of the video evidence to establish that the currency found on [Gibson's] person is exceedingly low to non-existent. Conversely, we concluded that the danger of unfair prejudice in using his art to broadly brand [Gibson] as a drug dealer is great.

*Id.* at 9.

As we discussed, other act evidence may be introduced to impeach character evidence. **See Ragan supra**. Moreover, our Supreme Court has held that other act "evidence may also be admissible to impeach the credibility of a testifying defendant[.]" **Commonwealth v. Reid**, 811 A.2d 530, 550 (Pa. 2002). However, the Commonwealth has not provided, and our independent review has not revealed, any legal authority to support the proposition that prior bad acts may be introduced in anticipation of a defense. Hence, we discern no trial court error in denying the Commonwealth's motion *in limine* to introduce the videos in anticipation of a

wholly speculative defense.   Accordingly, for all of the foregoing reasons, the Commonwealth is not entitled to relief.[5]

Order affirmed.   Case remanded for trial.   Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/30/2015

---

[5] We have examined the *amicus* brief filed by ACLU-PA.   Essentially, ACLU-PA asserts that admitting the videos into evidence "would pose an undue risk that Mr. Gibson will be punished in violation of his free-speech rights for speaking about crime, and for participating in an art form that many people find either offensive or incomprehensible, rather than for actual committing a crime."   ACLU-PA Amicus Brief at 9.   ACLU-PA contends that admitting "Gibson's art work as evidence rather than creative expression is likely" to chill free speech.   ***Id.*** at 11.   Having already determined that the Commonwealth is not entitled to relief, we need not reach these constitutional concerns.

Finally, on June 15, 2015, the Commonwealth filed a petition to file a post-submission response to the appellate briefs filed by Gibson and ACLU-PA. The Commonwealth avers those briefs were filed late and it did not have the opportunity to respond to either filing prior to oral argument.   We grant the Commonwealth's request pursuant to Pa.R.A.P. 2501(a) and have considered the post-submission filing in rendering our decision.