J-S32025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
  :
v.   :
  :
  :
  :
CHAMPIN VITAL   :
  :
Appellant   :   No. 1853 EDA 2023

Appeal from the Judgment of Sentence Entered February 8, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000677-2020

BEFORE: LAZARUS, P.J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.:          **FILED JANUARY 31, 2025**

Appellant, Champin Vital, seeks review of the judgment of sentence entered by the Court of Common Pleas of Philadelphia County (trial court). On January 1, 2020, Appellant got into an argument with his wife and shot her several times. He was charged with aggravated assault, possessing an instrument of a crime, and recklessly endangering another person. Following a non-jury trial, Appellant was found guilty as charged. He now argues that he is entitled to relief because the trial court erroneously admitted evidence of prior instances of domestic abuse against his wife; he also contends that the verdict is against the weight of the evidence. We affirm.

The following facts were adduced at Appellant's trial. On the evening in question, Appellant arrived at his mother-in-law's house to meet his wife, Sloannes Mejia. Although Appellant and Mejia were still married, Mejia had been living with her mother since the previous year, when she and Appellant

had separated. Soon after his arrival, Appellant began arguing with Mejia about a receipt for a recent purchase of shoes for their son. Mejia wanted the receipt so that she could exchange the shoes for a pair in a different size. Mejia agreed to go with Appellant to his autobody shop, where the receipt had been kept. *See* N.T. Trial, 5/11/2022, at 19-29.

When they arrived at the shop, Appellant and Mejia went into his office. Mejia noticed that a large silver handgun had been placed near where Appellant was sitting. Mejia felt a "vibe," and "intuition" due to Appellant's demeanor, and she became afraid for her safety. *Id*., at 29-30. Rather than comment on the weapon, Mejia decided to "stay silent" and leave the room. *Id*., at 30.

Mejia returned to Appellant's office moments later to ask Appellant for a phone charger so that she could find a ride home or call the police. Appellant refused, and he then continued arguing with Mejia. The argument soon became physical, as the two began "tussling" for control of the device. *Id*., at 31-33.

Mejia quickly went behind Appellant's desk to arm herself with a pair of scissors. She held out the scissor blades toward Appellant, demanding that he allow her to retrieve her phone. While standing about 12 feet away from Mejia, Appellant used his handgun to shoot her, striking her finger, and causing her to drop the scissors. Mejia began shouting at Appellant, and he shot her twice more, striking her in the arm and grazing her torso. *See id*., at 33-34, 37-40.

- 2 -

Having no other options, Mejia asked Appellant to take her to the hospital, and he agreed. However, while en route, Appellant told Mejia not to tell anyone that he had caused her injures. *See id*., at 42-43. When she entered the hospital, Mejia told her doctors and other hospital staff that she did not know who had shot her, or where the shooting had occurred. *See id*., at 144-45.

Mejia would later explain that she did not tell the truth at the hospital because her family had not yet learned of the long history of Appellant's abuse, and she was trying to keep it a secret. *See id*. Despite Mejia's initial reluctance to disclose Appellant's identity as the person who shot her, she reported the shooting to the police, naming Appellant as the perpetrator. He was then charged with several offenses related to the shooting.

Prior to trial, the Commonwealth moved to admit evidence of Appellant's earlier, uncharged assaults against Mejia, including: (1) a 2014 incident in which Appellant punched Mejia in the face and struck her in the head with a can; and (2) a 2016 incident in which Appellant punched Mejia multiple times, kicked her, and knocked out several of her teeth.[1] Following a hearing on September 25, 2020, the trial court ruled that both incidents were admissible under Pa.R.E. 404(b) to show Appellant's criminal intent, demonstrate Mejia's state of mind during the shooting, and generally to put the shooting episode

---

[1] The trial court also had granted the Commonwealth's motion to admit evidence of yet another incident which took place in 2015. The Commonwealth later decided not to introduce that evidence, so it is not at issue in this appeal.

into full context. The order admitting the evidence was entered on October 2, 2020.

At trial, Mejia testified to the above facts, including the prior episodes in 2014 and 2016. Mejia recounted that, in 2014, Appellant punched her multiple times and wrestled her to the ground while she was pregnant. She called the police after this incident, but later decided not to pursue the matter because she was reliant on the home Appellant provided during her pregnancy. Mejia also testified about the 2016 incident, in which Appellant punched her, kicked her, bit her, and knocked out several of her teeth. She recalled going to the police station after the incident and being taken to the hospital by officers. Appellant was not charged in 2016 because Mejia once more decided not to cooperate as a witness for the prosecution.

Detective Daniel Adams took the stand at the instant trial to corroborate Mejia's account. He discussed his investigations of both the 2016 incident and the subject incident in 2020. As to the incident in 2016, Detective Adams stated that he interviewed Mejia when she came to the police station. He observed that Mejia's face was severely swollen, red, and lacerated; he also noticed that two of her top two front teeth were missing. *See* N.T. Trial, 5/24/2022, at 57. The Commonwealth introduced into evidence a photo of Mejia's injuries from 2016 after having Detective Adams authenticate it. *See id*., at 58.

At the conclusion of the trial, Appellant was found guilty of aggravated assault, possessing an instrument of a crime, and recklessly endangering

another person. He was sentenced to a prison term of 11.5 to 23 months, followed by 10 years of probation. Immediately after sentencing, Appellant was granted parole and placed in the custody of the United States Immigration and Custody Enforcement. He has since been deported.

Appellant timely filed a post-sentence motion, which was denied by operation of law. Trial counsel for Appellant informed the trial court that Appellant had been deported, and counsel was permitted to withdraw from the case. Appellant filed a timely notice of appeal, and he was appointed appellate counsel. Both Appellant and the trial court satisfied the requirements of Pa.R.A.P. 1925. *See* Trial Court 1925(a) Opinion, 1/5/2024, at 4-9. In his brief, Appellant now raises the following two issues:

> 1. Whether the trial court erred in ruling in favor of the Commonwealth and admitting the prior bad acts of [Appellant] via written order dated October 2, 2020.
>
> 2. Whether the verdict was against the weight of the evidence in the situation where the complaining witness's testimony was so inconsistent as to shock the conscious with respect to the events that took place on the night of the shooting, including (1) the length of time spent at the place where the shooting allegedly took place; (2) the events leading up to the arrival at the place where the incident allegedly took place; (3) the subject of the verbal dispute between the complainant and [Appellant]; (4) the status of the parties' relationship; and (5) the moments immediately preceding the shooting.

Appellant's Brief, at 6 (suggested answers omitted).

Appellant's first claim is that the trial court abused its discretion by admitting into evidence two prior incidents in which he was alleged to have physically abused the victim in the present case, his spouse, Sloannes Mejia.

The general test for the admissibility of evidence is whether the evidence is relevant. *See Commonwealth v. Gad*, 190 A.3d 600, 603 (Pa. Super. 2018). "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence to the action." *Id*. (citing Pa.R.E. 401).

Pennsylvania Rule of Evidence 404(b)(1) bars the use of prior acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Exceptions to that rule are enumerated in Rule 404(b)(2), which allows evidence of prior acts to be admitted if used to prove a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). In addition, prior acts may be admissible as *res gestae* evidence, which establishes "the context or complete story of the events surrounding a crime." *Commonwealth v. Dillon*, 925 A.2d 131, 137 (Pa. 2007).

Even when such evidence is relevant, it is only admissible "if the probative value of the evidence outweighs its potential for unfair prejudice." *Id*.; *see also* Pa.R.E. 404(b)(2). In this context, "'unfair prejudice' means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Dillon*, 925 A.2d at 137 (quoting Pa.R.E. 403 cmt.).

A trial court's evidentiary rulings are reviewed for an abuse of discretion. *See Gad*, 190 A.3d at 603. "An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonably, or the result of partiality, prejudice, bias, or ill-will." *Id*. (quoting *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015)). The improper admission of a defendant's prior acts is less likely to be unduly prejudicial where the defendant chooses to be tried by a judge rather than a jury. *See Commonwealth v. O'Brien*, 836 A.2d 966, 972 (Pa. Super. 2003).

Here, the Commonwealth's evidence was relevant as long as it was probative as to any of the disputed elements of the charged crimes – aggravated assault (18 Pa.C.S.A. § 2702), possessing an instrument of a crime (18 Pa.C.S.A. § 907), and recklessly endangering another person (18 Pa.C.S.A. § 2705). At trial, a key disputed element of the aggravated assault count was whether Appellant had intentionally, knowingly, or recklessly caused serious bodily injury to Mejia when he shot her three times with a handgun. *See* 18 Pa.C.S. § 2702(a)(1).

The *mens rea* element of aggravated assault is equivalent to the "malice" standard required to sustain a conviction for third degree murder. *See Commonwealth v. Kling*, 731 A.2d 145, 147 (Pa. Super. 1999). In this context, "malice" refers to "not only a particular ill-will, but every case where

- 7 -

there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty[.]" ***Commonwealth v. Packer***, 168 A.3d 161, 168 (Pa. 2017) (quoting ***Commonwealth v. Drum***, 58 Pa. 9, 15 (Pa. 1868)).

Evidence of prior abuse by a defendant against an alleged victim may be admissible to prove the defendant's motive, intent, absence of mistake, lack of accident, malice, or ill-will. ***See Commonwealth v. Ivy***, 146 A.3d 241, 252 (Pa. Super. 2016); ***see also*** Pa.R.E. 404(b)(2) (evidence of prior bad acts "may be admissible for another purpose, such as motive, . . . intent, . . . absence of mistake or lack of accident.").

The evidence of Appellant's prior acts of domestic violence against Mejia was therefore probative as to his intent to cause her harm, as well as the degree of harm he intended to cause. That is, the earlier incidents tended to refute the claim that Appellant acted in self-defense, or that he lacked intent for Mejia to be seriously injured.

To the contrary, the earlier instances of violence tended to support the Commonwealth's allegation that Appellant had long harbored animus toward Mejia, and that this animosity was what motivated Appellant to shoot her and inflict serious injuries. ***See Commonwealth v. Powell***, 956 A.2d 406, 420 (Pa. 2008) (evidence of defendant's prior abuse of victim was relevant to establish his relationship with victim and the reasons why he would have had the requisite intent to murder him); ***Commonwealth v. Schwartz***, 615 A.2d

350, 356 (Pa. Super. 1992) (defendant's prior bad acts toward victim were probative of motive if the charged crime "grew out of or was in any way caused by the prior set of circumstances") (quoting **Commonwealth v. Mitchell**, 460 A.2d 1182, 1184 (Pa. Super. 1983)).

The fact that Appellant shot Mejia after she informed him that she wanted her phone to call the police is therefore probative as to Appellant's motive, intent, and state of mind, as incapacitating Mejia would have enabled him to continue escaping accountability for his past crimes. **See Commonwealth v. Dowling**, 883 A.2d 570, 578 (Pa. 2005) (defendant's prior attempted rape and robbery convictions against victim were relevant at his subsequent murder trial because it was probative of his motive to murder victim and prevent her from testifying in the earlier proceedings); **Commonwealth v. Drumheller**, 808 A.2d 893 (Pa. 2002) (prior instances of domestic abuse found admissible as evidence of defendant's motive and ill-will toward victim).

Further, we find that the trial court did not err in ruling that the probative value of the evidence outweighed its potential for unfair prejudice. As mentioned above, the potential risk of unfair prejudice was minimized by the trial court's role as the factfinder. "In a non-jury trial, the court is presumed to have disregarded evidence too prejudicial to be considered by a jury, thus assuming that the court in a bench trial would follow the very instructions

which it would otherwise give to a jury." **Commonwealth v. Gonzales**, 609 A.2d 1368, 1371 (Pa. Super. 1992).

Here, the trial court sat as the finder of fact. And in its 1925(a) opinion, the trial court explained that Appellant's prior bad acts were relevant to establishing his intent behind the shooting. **See** Trial Court 1925(a) Opinion, 1/5/2024, at 6-7.[2] We find nothing in the record which rebuts the presumption that the trial court correctly viewed the evidence and applied the law, or which suggests that the trial court improperly construed the prior bad acts as evidence of Appellant's propensity to inflict domestic abuse on Mejia. Thus, as to Appellant's first claim, no relief is due.[3]

Appellant's second claim is that the verdict is against the weight of the evidence because the inconsistencies in Mejia's account made her an

_____

[2] The trial court did not focus on the "motive" exception of Pa.R.E. 404(b)(2), but this Court may affirm on that ground as long as the record supports it. **See In re A.J.R.-H**, 188 A.3d 1157, 1175-76 (Pa. 2018) ("The 'right for any reason' doctrine allows an appellate court to affirm the trial court's decision on any basis that is supported by the record.").

[3] The trial court also advanced additional grounds to admit Appellant's prior bad acts, such as the *res gestae* exception, and the victim's state of mind. **See** Trial Court 1925(a) Opinion, 1/5/2024, at 6-7; **see also Commonwealth v. Dillon**, 925 A.2d 131, 137 (Pa. 2007) (holding that prior bad acts may be admissible as *res gestae* evidence, which establishes "the context or complete story of the events surrounding a crime."). However, having found the evidence to be admissible for the reasons given above, it is unnecessary for this Court to further assess the trial court's rationale.

unreliable witness. *See* Appellant's Brief, at 16-17.[4] Specifically, Appellant argues that the verdict must be vacated because Mejia did not testify consistently with her pretrial statements regarding the timing of the shooting on the night in question, the status of her relationship with Appellant at that time, and the reasons they began arguing just prior to the shooting. *See id*.

A trial court's ruling that the verdict is not against the weight of the evidence is subject to an abuse of discretion standard of review. *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994) (citations omitted). "A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id*.

When deciding if the verdict is against the weight of the evidence, the trial court must determine whether, "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000). A new trial should not be granted due to a "mere

---

[4] Appellant has argued that the evidence of prior acts of domestic violence was more prejudicial than probative because it would have reasonably led the factfinder to believe that Appellant did not shoot Mejia accidentally or in self-defense. *See* Appellant's Brief, at 14. Yet, the prior bad acts were probative of material issues because they tended to show that Appellant acted not out of fear of physical danger, but rather to incapacitate Mejia so that she could not report his past and present abuses to the police.

conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Id***.

On appeal, the standard applicable to weight of evidence claims is much different. An appellate court's task "consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth v. Upshur***, 764 A.2d 69, 73 (Pa. Super. 2000) (citing ***Widmer***, 744 A.2d at 753).

Appellant argues here that the trial court abused its discretion in denying his weight of evidence claim because Mejia contradicted herself during her testimony about the circumstances of the shooting. But even accepting that her testimony was indeed inconsistent in some respects, it was the role of the trial court, sitting as the finder of fact, to assess her credibility and determine which parts of her testimony to believe, if any. ***See Commonwealth v. Delmonico***, 251 A.3d 829, 837 (Pa. Super. 2021) ("Resolving contradictory testimony and questions of credibility are matters for the finders of fact.").

Defense counsel cross-examined Mejia, and the trial court was fully apprised of all the discrepancies in her testimony which Appellant now enumerates in his brief. Mejia gave explanations as to why her testimony differed from her earlier statements, and the trial court found them to be credible, as it was free to do. Thus, the trial court did not abuse its discretion when it denied Appellant's post-sentence motion, and no relief is due on his second claim.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/31/2025